## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PAMELA MILES-HICKMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0754 |
| | § | |
| DAVID POWERS HOMES, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case arises from events occurring during the employment of Plaintiff Pamela Miles-Hickman's ("Hickman" or "Plaintiff") by Defendant David Powers Homes, Inc. ("DPH" or "Defendant") and the cessation of that employment.  The parties have filed several motions.  First, Plaintiff filed a Motion for Partial Summary Judgment [Doc. # 43] ("Plaintiff's Motion"), in which she seeks summary judgment on her COBRA[1] claim against Defendant.[2]  DPH filed a Motion for Summary Judgment [Doc. # 46] on all claims Plaintiff asserts in this case.[3]  DPH has

---

[1]   Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*

[2]   Hickman's motion is supplemented by a Memorandum in Support [Doc. # 43-2] ("Plaintiff's Mem.") and additional exhibits [Doc. # 45].  DPH has responded [Doc. # 50], Hickman has replied [Doc. # 54], and DPH has filed a surreply [Doc. # 60].

[3]   Hickman has responded [Doc. # 56], DPH has replied [Doc. # 66], Hickman has filed a surreply [Doc. # 68], and DPH has filed a response to the surreply [Doc. # 72].

additionally filed a Motion for Partial Summary Judgment on Damages [Doc. # 48] ("Defendant's Damages Motion").[4]   Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Defendant's summary judgment motion on liability should be **granted in part** and **denied in part**, that Defendant's Damages Motion should be **granted in part** and **denied in part**, and that Plaintiff's Motion should be **granted in part** and **denied in part**.

Hickman also has filed a Motion to Exclude Defendant's Experts [Doc. # 47] and Objections to Defendant's Motion for Summary Judgment on All of Plaintiff's Claims [Doc. # 57].[5]   DPH has similarly filed Objections to Plaintiff's Summary Judgment Evidence [Doc. # 64].[6]   The Court will rule on these motions only to the extent that the Court relies on information to which a party objects.

## I.   FACTUAL BACKGROUND

The background facts can be summarized as follows.   Hickman was hired on an at-will basis as a sales assistant with homebuilder DPH in September 2003.   She was assigned to the Crighton Ridge community to assist with home sales.   Upon being

---

[4]   Hickman has responded to the Damages Motion [Doc. # 58], DPH replied [Doc. # 66], Hickman filed a surreply [Doc. # 68], and DPH further responded [Doc. # 72]. To the extent relevant, the Court considers all the filings by the parties in deciding each of the pending motions.

[5]   DPH has responded [Docs. # 62, # 65] and Hickman has replied [Doc. # 63].

[6]   Hickman has responded [Doc. # 67] and DPH has replied [Doc. # 69].

hired and during her tenure, Hickman was provided a variety of employment documents, including an employee handbook and information concerning employee benefits.  As a DPH employee, Hickman received employer-paid health insurance from Aetna Health, Inc. ("Aetna").

Hickman claims to suffer from a variety of ailments that she asserts render her extremely sensitive to certain chemicals, strong fragrances, and peanuts.  Accordingly, she requested and received informal accommodations from the Crighton Ridge Sales Consultant, Bill Oldham.   Oldham refrained from wearing heavy cologne and prohibited cigarettes in Hickman's work area.  He also ensured that no pesticides, wet paint, candles, or fragrances were used in Hickman's work area when she was present, and that odorless ant bait was used by DPH's maintenance staff, among other directives.   Hickman alleges that on November 18, 2005,  immediately after DPH terminated Oldham's employment, she had a discussion with Jennifer Fusco, DPH's Director of Human Resources, about Hickman's various allergies and the accommodations Oldham had made.  Hickman states she orally requested at that time that Oldham's replacement continue to honor her requests.  On December 1, 2005, Hickman wrote an email to Fusco outlining some of her disabilities and requesting

formal ADA accommodations.[7]  There appears no dispute that Fusco responded, pursuant to DPH's policy, that Hickman needed to provide a report from a physician substantiating her medical conditions and addressing the accommodations she was requesting, so that the company could initiate the process of determining whether and how to accommodate Hickman's needs.

Hickman reports that before she was able to comply with the substantiation request, Fusco and DPH Sales Director, Kevin Weiderhold, came to her office on December 7, 2005, and, for the first time since she was hired two years earlier, provided her feedback on her job performance.  Hickman states that Fusco and Wiederhold criticized her performance and attempted to demote her by relocating her to another DPH community.  Hickman claims that after she protested that she was being discriminated against because of her disability, they rescinded the "demotion" but informed Hickman that if she did not meet certain sales requirements within thirty days, she would be terminated.[8]

---

[7]     Defendant contends that Hickman did not orally request at the November 18 meeting that the informal accommodations be continued.  Rather Defendant contends that Hickman's December 1, 2005, email constituted Hickman's first request for ADA accommodations.

[8]     DPH disputes this characterization of these interactions with Hickman.  DPH claims that Hickman's job performance had been substandard for some time and that she was counseled on November 18, 2005, and again on December 7, 2005, regarding her performance.  Hickman disputes DPH's characterization of that meeting.  *See* (continued...)

A few days after the December 7, 2005, meeting, Hickman began experiencing medical problems and required a battery of medical tests.  Hickman asserts that she contacted Bob Svoboda,  Bill Oldham's replacement as Crighton Ridge Sales Consultant—who she claims was her immediate supervisor and the proper person to contact in event of an absence from work—and/or co-workers at DPH each of the four days she missed work as a result of her illness, both to inform them that she would be absent and to check on projects on which she was working.  Hickman has also testified that on December 14, 2005, she left a message on Kevin Wiederhold's voicemail regarding taking time off for medical tests, although, Defendant disputes this assertion.[9]  The day before her scheduled return on December 17, Hickman discovered an email from Fusco explaining that because Hickman allegedly failed to

---

[8]   (...continued)
Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 56], at 5 ("Plaintiff's Response").

[9]   *See* Defendant's Motion for Summary Judgment [Doc. # 46], Exh. B: "Deposition of Pamela Marie Miles-Hickman," at 175–77 ("Hickman Deposition").  Mr. Wiederhold has testified that he never received any voicemail from Hickman.  Defendant's Motion for Summary Judgment [Doc. # 46], Exh. D: "Deposition of Kevin R. Wiederhold," at 30 ("Wiederhold Deposition").

Although Fusco was apparently aware that Hickman contacted Svoboda, DPH claims that Kevin Wiederhold was Hickman's direct supervisor and that Hickman should have, but failed, to notify him of her absences.

comply with DPH's "Attendance, Punctuality, and Dependability" policy, she was deemed to have voluntarily resigned.[10]

Hickman asserts that following her separation from DPH, the company failed to provide her with notice and information concerning her entitlement to continuation of her health benefits.  DPH disputes this allegation, pointing to language in the DPH employee handbook concerning post-termination coverage,[11] and to the separation letter sent to Hickman on December 16, 2005, wherein it states: "Your benefits will run through December 31, 2005.  After that date, you will be eligible for COBRA, and will be sent notification directly from InfiniSource (our COBRA outsource company)."[12]

---

[10]    DPH's attendance policy was contained in the DPH Employee Handbook, which Hickman acknowledges she received. *See* Defendant's Motion for Summary Judgment [Doc. # 46], Exh. A: "Business Records," at Bates No. DPH000026 (This exhibit is not separately paginated.  Page citations are to the Bates numbers stamped on each page.).  It states:

> [A]n employee must notify his/her supervisor as far in advance as possible, but not later than one hour before his/her scheduled starting time if he/she expects to be late or absent.  This policy applies for each day of his/her absence.  An employee who fails to contact his/her immediate supervisor two times ("no call-no show") will be considered as having voluntarily resigned.

*Id.* at Bates No. DPH000073.

[11]    *See id.* at Bates No. DPH000101–102.

[12]    *Id.* at Bates No. DPH000153.

Hickman subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and retaliation. Upon receiving a "Notice of Right to Sue" letter from the EEOC, she timely filed this lawsuit, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. § 1001 *et seq.*, and the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*

DPH has moved for summary judgment on all claims and the damages asserted by Hickman. Hickman seeks summary judgment in her favor on her COBRA claim.

## II.   <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for

summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute

as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or

would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III. ANALYSIS

### A.  <u>ADA and TCHRA Claims</u>

Hickman claims that DPH discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.*, when it terminated her employment because of her alleged disabilities.[13]

---

[13]  The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The TCHRA "secure[s] for persons in this state, including persons with disabilities,
(continued...)

Hickman also asserts that prior to her termination, DPH failed to provide reasonable accommodations for her disability and that the company unlawfully retaliated against her for requesting accommodations.  Defendant contends that Plaintiff lacks evidence to satisfy the requirements of proof necessary to each of these theories and thus Defendant is entitled to summary judgment on all of them.

### 1.     Disparate   Treatment   Based on Disability—Wrongful Termination

Hickman's first claim is that Defendant DPH terminated her employment because she is disabled, and thus violated the ADA and TCHRA anti-discrimination provisions.[14]  In order to survive summary judgment, Hickman must raise a genuine

---

[13]     (...continued)
freedom from discrimination in certain employment transactions, in order to protect their personal dignity," by "provid[ing] for the execution of the policies embodied in" *inter alia* the ADA.  TEX. LAB. CODE §§ 21.001(3), (4).

[14]     Hickman has asserted identical claims under two statutory provisions, the ADA and the TCHRA.  The TCHRA, like the ADA, prohibits employment-based discrimination grounded in an individual's disability.  Texas courts "look to analogous federal precedent for guidance when interpreting the Texas Act" because the provisions are very similar.  *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)); *see also Herrera v. CTS Corp.*, 183 F.Supp.2d 921, 925 (S.D. Tex. 2002) ("The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment.  Federal law prohibiting disability discrimination by employers is found in the . . . [ADA], and thus courts must look to this statute in interpreting the TCHRA.") (citations and quotations omitted).  Thus courts must look to the "analogous federal precedent"—in this case, the ADA—when interpreting the TCHRA.  *NME Hosps. Inc.*, 994 S.W.2d at 144; *see also Holt v. Lone Star Gas. Co.*, 921 S.W.2d 301, 304 (Tex. App.—Ft. Worth 1996, no writ).  The parties have
(continued...)

issue of material fact whether DPH discriminated against her on the basis of one or more provable disabilities.

### a.    Burdens of Proof

The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Unlawful discrimination under the ADA can be established through either direct or circumstantial evidence.  *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).  As Hickman sets forth no direct evidence that she was discharged for unlawful reasons, her ADA claims are analyzed using the burden shifting test originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this test, a plaintiff must first make a *prima facie* showing of discrimination; the defendant then must articulate a legitimate non-discriminatory reason for the adverse employment action; and, if the defendant meets its burden, the plaintiff must then prove by a preponderance of the

---

[14]      (...continued)
identified no distinctions between the ADA and the TCHRA relevant to this lawsuit. Therefore, this court will employ only one analysis under the ADA and TCHRA when evaluating Hickman's discrimination claims.

evidence that the defendant's explanation is pretextual.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *Daigle*, 70 F.3d at 396.

### b.    *Prima Facie* Case

In order to make out a *prima facie* case of disability discrimination, a plaintiff must establish that:  "(1) [sh]e is disabled or is regarded as disabled; (2) [s]he is qualified for the job; (3) [s]he was subjected to an adverse employment action on account of h[er] disability; and (4) [s]he was replaced by or treated less favorably than non-disabled employees."[15]  *Gowesky*, 321 F.3d at 511 (citing *McInnis v. Alamo Cmty.*

---

[15]    Hickman contends that a *prima facie* case of disability discrimination requires the plaintiff to show that she "is a qualified individual with a disability, and that the negative employment action occurred because of the disability," citing *Holtzclaw v. DSC Commc'n. Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998)).  *Holtzclaw*'s test is a summary of a three-part *prima facie* standard for ADA disability discrimination claims advanced in *Robertson v. The Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998), which states that a plaintiff must show: (1) she has a disability as defined by the ADA; (2) she is a "qualified individual" for the job in question; and (3) the employer made an adverse employment decision based on the disability.  Hickman's reliance on *Holtzclaw* is misplaced.

The Court has identified several reported cases using this abbreviated recitation of the elements of a *prima facie* case under the ADA.  *See, e.g., ConAgra Grocery*, 436 F.3d at 474; *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 836 (5th Cir. 1999); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999); *Hamilton v. Southwestern Bell Tel.*, 136 F.3d 1047, 1050 (5th Cir. 1998); *Sherrod*, 132 F.3d at 1119.  Nevertheless, the genesis of the
(continued...)

*Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000)); *see also Aldrup v. Caldera*, 274

F.3d 282, 286 (5th Cir. 2001); *Allen v. Rapides Parish Sch Bd.*, 204 F.3d 619, 623 n.3

(5th Cir. 2000); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999); *Burch v.*

*Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997); *Taylor v. Principal Fin. Group,*

*Inc.*, 93 F.3d 155, 162 (5th Cir. 1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394,

396 (5th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973)).[16]

### c.    "Disability" Legal Standards

The ADA prohibits discrimination in employment against a "qualified" person

with a "disability."  The ADA defines a "qualified individual with a disability" as "an

individual with a disability who, with or without reasonable accommodation, can

---

[15]    (...continued)
authorities in the *Gowesky* four-part-test line of cases cited in the accompanying text
is *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir. 1995), which predates
*Sherrod*.  One appellate panel may not overrule a decision, right or wrong, of a prior
panel, absent *en banc* reconsideration or a superceding contrary decision of the
Supreme Court.  When faced with conflicting panel opinions, the earlier opinion
controls.  *See, e.g., United States v. Dial,* __ F.3d __, __, 2008 WL 4166694, at *1
(5th Cir. Sept. 11, 2008) ("our rule of orderliness directs that 'one panel of this court
cannot overrule the decision of another panel.'") (citing *Lowrey v. Tex. A&M Univ.*
*Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417,
425 n.8 (5th Cir. 2006); *Barrientes v. Johnson*, 221 F.3d 741, 780 n.30 (5th Cir.
2000).  In light of the earliest Fifth Circuit precedent, Hickman must establish a *prima*
*facie* case of discrimination using the four-part test set forth in *Gowesky*.  321 F.3d
at 511.

[16]    The parties do not dispute that Hickman was qualified for her job with DPH.

perform the essential functions of the employment position that such individual holds

or desires."  42 U.S.C. § 12111(8).  The ADA further defines "disability" to include

"(A) a physical or mental impairment that substantially limits one or more of the

major life activities of such individual; (B) a record of such impairment; or (C) being

regarded as having such impairment."  42 U.S.C. § 12102(2); *ConAgra Grocery*, 436

F.3d at 474.

Merely having an impairment does not make one disabled for purposes of the

ADA.  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002).  The

impaired individual must further demonstrate that the impairment substantially limits

a major life activity.  *Id.*; *ConAgra Grocery*, 436 F.3d at 474.  The ADA does not

define the terms "substantially limits" or "major life activities."  In interpreting this

standard, however, the Supreme Court and the Fifth Circuit have made clear that the

terms must be "interpreted strictly to create a demanding standard for qualifying as

disabled."  *Toyota Motor Mfg.*, 534 U.S. at 197; *Waldrip v. Gen. Elec. Co.*, 325 F.3d

652, 654 (5th Cir. 2003).  "The substantial-limit requirement is the linchpin of

§ 12102(2)(A).  Without it, the ADA would cover any minor impairment that might

tangentially affect major life activities such as breathing, eating, and walking. For this

reason, an impairment must not just limit or affect, but must substantially limit a major

life activity."  *Waldrip*, 325 F.3d  at 655 (citing *Albertson's, Inc. v. Kirkingburg*, 527

U.S. 555, 565 (1999)).  "'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'"  *Toyota*, 534 U.S. at 196.

In determining whether an impairment substantially limits a major life activity, courts derive guidance from the regulations promulgated by the EEOC.  *See, e.g., Waldrip*, 325 F.3d at 655 n.1; *Dupre v. Charter Behavioral Health Systems of Lafayette Inc.*, 242 F.3d 610, 614 (5th Cir. 2001); *Gonzales v. City of New Braunfels*, 176 F.3d 834, 836 (5th Cir. 1999).  EEOC regulations define "major life activities" to include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(I); *Aldrup v. Caldera*, 274 F.3d 282, 286–87 (5th Cir. 2001).  Whether an impairment is "substantially limiting" depends on "(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact."  *Dupre*, 242 F.3d at 614 (citing 29 C.F.R. § 1630.2(j)).  "[T]emporary, non-chronic impairments of short duration, with little or no longer term or permanent impact, are usually not disabilities."  *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998); *see also Deas v. River West, L.P.*, 152 F.3d 471, 479 (5th Cir. 1998) (holding that temporary loss of awareness from petit mal seizures did not constitute a substantial limitation on a major life activity, even though awareness encompasses the major life activities of seeing, hearing, and speaking).

Moreover, determination of whether an impairment substantially limits a major life activity must be made with consideration of any mitigating measures exercised by the individual. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482–83 (1999); *Equal Employment Opportunity Comm. v. R.J. Gallagher Co.*, 181 F.3d 645, 653–54 (5th Cir. 1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton*, 527 U.S. at 482–83.

### d.   Disability Analysis: Substantially Limiting Impairment

The parties hotly dispute whether Hickman has—or more importantly, in 2005 at the time of her employment with DPH, had—a "disability" under the ADA and TCHRA. Hickman primarily contends she has a substantial impairment to her ability to breathe due to various alleged allergies to chemicals and other allergens, and "allergy-induced asthma."[17]  In her Response to Defendant's Motion, she also asserts a substantial impairment in her ability to walk. Hickman claims impairment to her ability to breathe and walk is a result of exposure to chemicals, including *inter alia*

---

[17]    Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman," at 1–2.  It is noted that Hickman's list of perceived allergies is not supported by the medical allergy tests she took in December 2005.  Where the parties' documents do not all have legible page numbers, the Court cites to the Electronic Court Filing System automated pagination. *Compare* Plaintiff's Response [Doc. # 56], Exh. G: "Medical Records of Susan Jacobs: Report of Andrew W. Campbell," at 14 of 40, *with* Plaintiff's Response [Doc. # 56], Exh. G: "Medical Records of Susan Jacobs: Allergy Test Results," at 31–37 of 40.

wet latex paint, strong perfume, scented candles and potpourri, which cause her throat to close, restricting her airways.[18]  She claims she also suffers from anaphylactic reactions, autoimmune problems,[19] and "hyperactive reactive airway disease" that "sets her bronchial tubes into spasms,"[20] cardiac dysfunction that causes "uncontrollably rapid" heart beat, and tachycardia that cause her to be "short of breath and panicky."[21]  Plaintiff claims that "[w]hen [she is] exposed to these asthmatic 'triggers,' [she] is prone to severe allergic reactions that induce swelling of [her] throat, lips and tongue and airway passages, causes shortness of breath, tightness of [her] chest muscles, hives irritation of [her] mucous membranes, watery eyes, itching of the mouth nose and throat, mouth blisters, allergy induced migraine headaches and sudden loss of blood pressure that substantially affects [her] ability to walk, talk and breathe."[22]

---

[18]    Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman," at 2.

[19]    *See* Plaintiff's Response [Doc. # 56], Exh. G: "Medical Records of Susan Jacobs: Report of Andrew W. Campbell," at 10 of 40.

[20]    Plaintiff's Response [Doc. # 56], Exh. A-9: "Excerpts of Medical Records: Report of William Tompkins," at 3 of 28.

[21]    *Id.*

[22]    Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman," at 1–2.  Plaintiff also describes gynecological ailments but she does not claim those are evidence of a disability.  These medical conditions are immaterial for the
(continued...)

Defendant counters that Plaintiff has presented insufficient evidence of any substantial limitation in daily functioning as a result of the allergies and other conditions that affect her breathing.  Defendant points out that Dr. Campbell, a treating physician in 1998, stated that "[w]ith proper treatment she should be able to maintain gainful employment."[23]  Defendant also contends that a medical diagnosis of an impairment is itself insufficient to prove a substantial limitation, and that Plaintiff can function with "mitigating measures" such as taking Benadryl or Zyrtec when symptoms begin to appear.[24]

*Substantially Limiting Impairment—Breathing.*  Breathing is considered a major life activity.  *See* 29 C.F.R. § 1630.2(I); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996); *see also Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1258 (10th Cir. 2001) (noting that "several courts have concluded that breathing difficulties may constitute an impairment of a major life activity").  However, the determination of disability must be made on an individualized, case-by-case basis.  *See Sutton*, 527 U.S. at 483.  Whether the impairment is "substantially

---

[22]     (...continued)
         "disability" determination.

[23]     Plaintiff's Response [Doc. # 56], Exh. G: "Medical Records of Susan Jacobs: Report of Andrew W. Campbell," at 10 of 40.

[24]     Defendant's Motion for Summary Judgment [Doc. # 46], at 14, 16–17 (citing *Toyota Motor Mfg.*, 534 U.S. at 196, and *Sutton*, 527 U.S. at 482)

limiting" depends on the nature and severity of the impairment, its duration or expected duration, and its permanent or expected permanent or long-term impact.[25]

Defendant contends that Plaintiff's breathing limitations are sporadic and temporary, and suggests that the findings of the medical professionals are incomplete, conclusory, tentative, and/or based on standards other than those applicable under the ADA. Plaintiff asserts that her medical records from the 1990's indicate that her allergies and autoimmune conditions (to the extent they have been substantiated with medical testing) are chronic and long-lasting.

Severe allergies and asthma, if proven, have the potential to constitute an impairment that substantially limits the life activity of breathing. *See, e.g.*, *Homeyer v. Stanley Tulching Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996). However, this impairment must rise to the level of substantially limiting, and occasional allergic or asthmatic reactions have not been found to rise to this level. *See Muller v. Costello*, 187 F.3d 298 (2d Cir. 1999) (finding that plaintiff who suffered from severe bronchitis

---

[25] Defendant objects to some of the medical reports and related documents on which Plaintiff relies. *See, e.g.*, Defendant's Reply [Doc. # 66], at 2 (objecting to the Dr. Andrew W. Campbell documents as inadmissible hearsay); Defendant's Objection to Plaintiff's Summary Judgment Evidence [Doc. # 64], at 8. The Court overrules this objection for summary judgment purposes as these materials appear to have sufficient reliability to be relevant to Plaintiff's doctors' diagnoses of her conditions. *See* FED. R. EVID. 803(6). However, if relevant to any issues at trial, these documents will not be admissible before the jury without medical testimony, because the unsupported records will confuse the jury.

with a strong asthmatic component that made it difficult to breathe when exposed to cigarette smoke, but who demonstrated substantial physical activity off the job without encountering breathing problems, was not substantially limited in a major life activity); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999) (holding that plaintiff's severe allergic reaction to peanuts did not substantially limit the major life activity of breathing when the plaintiff's ability to breathe was "generally unrestricted" when not exposed to peanuts); *Hamilton*, 136 F.3d at 1051 ("temporary, non-chronic impairments of short duration, with little or no permanent long-term impact, are usually not disabilities"); *Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997) (holding that although breathing was hampered during an actual panic attack, the disorder did not substantially limit the plaintiff's major life activity of breathing where the attacks were infrequent and very manageable); *Robinson*, 101 F.3d at 37 ("Several instances of shortness of breath when climbing stairs [resulting from asbestosis and reduced lung capacity] do not rise to the level of *substantially* limiting the major life activity of breathing); *Murphy v. Bd. of Educ. Of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 315 (W.D.N.Y. 2003) ("[m]any courts addressing the issue . . . have found that asthma does not substantially limit the particular plaintiff's ability to work or breath and therefore does not constitute a disability under the ADA") (citing *Castro v. Local 1199, Nat'l Health and Human Servs. Employees*

*Union*, 964 F.Supp. 719, 724 (S.D.N.Y. 1997)); *Gits v. Minn. Mining & Mfg. Co.*, 2001 WL 1409961 (D. Minn. 2001) (finding that a plaintiff's severe breathing difficulties which only occurred when exposed to a particular chemical allergen did not substantially limit the plaintiff's ability to breath within the definition of disability under the ADA); *Marshall v. AT&T, Inc.*, 1996 WL 929599, at *3 (N.D. Tex. 1996) (finding that plaintiff's "breathing impairment is, as a matter of law, not a 'disability' since it is not permanent in nature"); *Emery v. Caravan of Dreams, Inc.*, 879 F. Supp. 640, 642–43 (N.D. Tex. 1995) (finding that plaintiff's allergy to cigarette smoke did not qualify as a disability within the meaning of the ADA because it did not substantially impair her ability to work, recreate, breathe, or have a normal life).

Plaintiff's allergic reactions or incidents of distress are sporadic and of undefined length and severity. Plaintiff has not produced evidence sufficient to establish a genuine issue of fact that she generally is unable to perform the major life activity of breathing.  Hickman does not point the Court to sufficient evidence that the duration of problematic episodes or that the flare ups are frequent or cause lasting impact.  Furthermore, what little admissible evidence the Court has located in the record[26] supports the view that the incidents at best reflect temporary impairments

---

[26]   It is not the role of the Court "to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, (continued...)

lacking in the types of permanent or long-term effects required to constitute a disability. Hickman testified and the medical records reveal that by medicating herself and by removing herself from proximity to the alleged allergens, she has controlled the conditions satisfactorily such that her breathing at most times is not affected and any symptoms she does have dissipate.[27]  Hickman has failed to meet her summary judgment burden of raising a genuine fact issue that at the time she was employed by DPH she was substantially limited in the major life activity of breathing.

*Substantially Limiting Impairment—Walking.*  Plaintiff also contends that she is and was when employed by Defendant substantially limited in the life activity of "walking."  She claims she walks very slowly, gets very tired, and can only walk

---

[26]     (...continued)
501 (5th Cir. 2005) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

[27]     Hickman Deposition [Doc. # 46, Exh. B], at 88–89.  While the Court recognizes that Hickman has also testified that Benadryl "doesn't always work," *id.* at 78, this conclusory statement is not sufficient to establish duration or severity to prove a disability and thus does not satisfy Hickman's summary judgment burden on this issue.  *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 376 n.33 (5th Cir. 2001) ("[c]onclusory [sic] statements in an affidavit do not provide facts that will counter summary judgment evidence") (alterations in original).

Furthermore, in her revised and corrected deposition testimony, Plaintiff states that she "discussed with her physician" who states that her "breathing can still be affected by those allergens, even if [Plaintiff] remove[s] herself from the proximity of those allergens."  Plaintiff's Response [Doc. # 56], Exh. B-1: "Plaintiff's Deposition as Corrected," at 3.  This testimony is inadmissible hearsay.

"short distances and then is out of breath."[28]   Defendant first contends that this disability was not timely disclosed and should not be permitted.  Plaintiff explains without contradiction that she provided to the Defendant during discovery the documentation on which she now relies.  Defendant did not pose any interrogatory that called for her to enumerate all her impairments.  While Plaintiff arguably had an obligation to set forth in her Federal Rule of Civil Procedure 26(a) and (e) disclosures exactly what impairments she claims she suffered, it appears that Defendant could have discerned during discovery that Plaintiff was asserting difficulty walking as an aspect of her disability.  The Court therefore turns to the merits of this aspect of Hickman's disability claim.[29]

Walking is a major life activity.  *See* 29 C.F.R. § 1630.2(I); *Talk*, 165 F.3d at 1025.  However, as noted previously, an actionable impairment must be substantially limiting; occasional difficulties while walking do not rise to a necessary level of severity.  *Talk*, 165 F.3d at 1025 ("moderate difficulty experienced while walking does not rise to the level of a disability"); *Penny v. United Parcel Service*, 128 F.3d

---

[28]   Plaintiff's Response [Doc. # 56], at 10; Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman,"¶ 2.

[29]   Hickman's claim of walking as an impairment to support a disability theory has other potential difficulties.  Hickman points to no competent medical evidence that her alleged difficulties in walking are connected to the chronic allergy, asthmatic or autoimmune conditions of which she complains, *or* that her claimed difficulty in walking affected her ability in any way to perform her duties on the job.

408, 415 (6th Cir. 1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (inability to walk more than one mile and inability to jog does not rise to the level of a disability); *Okpulor v. PNC Bank*, 2005 WL 6047275, at * 4 (N.D. Tex. Dec. 14, 2005); *Smith v. United Parcel Service*, 50 F.Supp.2d 649, 652 (S.D. Tex. 1999).  Hickman has failed to direct the Court to specific evidence in the record relating to the severity, duration, or frequency of the alleged walking difficulties. Plaintiff's sole citation is to a statement signed by a Dr. Earl Martin for a Texas Department of Transportation ("TxDOT") certification that she is "disabled" based on the doctor's claimed perception that she has "mobility problems that substantially impair the person's ability to ambulate."[30]  Issuance of a certificate by TxDOT is not dispositive of the ADA issues before this Court.  Plaintiff provides no authority of TxDOT's standards for issuance of its certificate or how that standard compares to the standards under the ADA.  Hickman accordingly has failed to meet her summary judgment burden on the issue on whether she is substantially limited in the major life activity of walking.

---

[30]     Plaintiff's Response [Doc. # 56], Exh. A-9: "Excerpts of Medical Records: Application for Disabled Person Identification Placard," at 6 of 28.

In summary, Hickman has failed to raise a genuine fact issue that she is substantially limited in the major life activities of breathing or walking. As matter of law, Hickman has not shown she can establish a *prima facie* case of disability discrimination on the basis of actual disability as defined by 42 U.S.C. § 12102(2)(A).

### e.    Disability Analysis:  Record of Disability

Hickman also contends that she had "a record" of being disabled because she provided to Defendant on December 8, 2005 a packet of medical records, doctors' letters, and medical articles on her disabilities.[31]  The ADA definition of "disability" permits suits by those who, though not actually disabled as defined by 42 U.S.C. § 12102(2)(A), have a "record of such an impairment." 42 U.S.C. § 12102(2)(B).  To demonstrate a record of impairment, Hickman must show that (1) she has a history of impairment; and (2) the impairment substantially limits a major life activity. *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002) (citing *Dupre*, 242 F.3d at 615).  Thus, while an individual may be able to show she has a history of impairment, if she fails to show that the impairment substantially limits a major life activity, she cannot establish a *prima facie* case of disability discrimination on the basis of a "record of impairment."  *See id.*

---

[31]    Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman," ¶ 16; *id* Exh. A-9.

Applicable regulations define a "record of impairment" to mean that an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The Fifth Circuit has interpreted this to mean that the individual, "at some point in the past, must have met or been classified as meeting the standard set forth in section 12102(2)(A)." *Burch*, 119 F.3d at 321. That Hickman believed her alleged impairments were significant enough to warrant medical treatment at some point in the past and that medical professionals compiled records of their treatments of her does not establish a "record of impairment" as used in the ADA. As discussed above, Hickman has failed to raise a genuine issue of fact to show that she was substantially limited in a major life activity to the degree required under the ADA. Having failed to satisfy this proof requirement, Hickman cannot establish as a matter of law a *prima facie* case of disability discrimination on the basis of a "record of impairment" as defined by § 12102(2)(B).

### f.    Disability Analysis:  Regarded as Disabled

Hickman also argues that she was "regarded as disabled" by Defendant DPH. Under the ADA, "disability" may be shown by those who, though not actually disabled as defined by 42 U.S.C. § 12102(2)(A), are "regarded as" having such an impairment

by the employer.  *See id.* § 12102(2)(C).  A plaintiff can establish a "regarded as"

claim by demonstrating that she:

> (1) has an impairment which is not substantially limiting but which an
> employer perceives as constituting a substantially limiting impairment;
> (2) has an impairment which is substantially limiting only because of the
> attitudes of others toward such an impairment; or (3) has no impairment
> at all but is regarded by the employer as having a substantially limiting
> impairment.

*ConAgra Grocery*, 436 F.3d at 475 (citing *Bridges v. City of Bossier*, 92 F.3d 329, 332

(5th Cir. 1996)).  Hickman does not address prongs two and three, therefore the

Court's analysis focuses on whether Hickman had an impairment which is not

substantially limiting but which DPH perceives as constituting a substantially limiting

impairment.

In support of her claim, Hickman relies on the evidence of Bill Oldham's

informal accommodations.  Oldham stated in an affidavit that "[b]ased on

[Hickman's] requests and special needs, and because her requests were not a burden

on me or any other employee, I accommodated her requests."[32]  Hickman argues that

Oldham "would not have granted these accommodations . . . unless he regarded

Hickman as having an impairment that is substantially limiting."[33]  This Court is

unpersuaded.  Hickman's theory has two deficiencies.  First, to be "regarded as"

---

[32]    *Id.* at Exh. C: "Affidavit of Bill Oldham," at 1.

[33]    Plaintiff's Response [Doc. # 56], at 13.

disabled, a plaintiff cannot simply rely on an employer's knowledge of the employee's physical condition. Rather, the plaintiff must show that the employer perceived the employee had an impairment that rose to the level of an actionable disability, namely, that the impairment caused a substantial limitation to the employee's ability to perform a major life activity. *See Garrett v. AutoZone Inc.*, 224 F.3d 765, 2000 WL 992259, at *2 (5th Cir. 2000) (unpublished); *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997). While the evidence shows that Oldham may have had some concern about Hickman's condition or that he may have believed she had some level of chemical sensitivities, Plaintiff presents no evidence that Oldham thought that she was "disabled" in that he believed she suffered substantial limitations on the major life activities of breathing or walking.[34]

Second, and more importantly, Oldham was merely a sales consultant, the top company representative at the sales office for one of DPH's several communities in development. There is no evidence he was in DPH management or that he informed management of the courtesies he was showing Hickman.[35] Oldham's unilateral action undertaken without corporate management knowledge or approval cannot be imputed

---

[34]    Non-management co-workers' informal accommodations of each others requests are insufficient to establish that an employer, through its management, "regarded" an employee as disabled.

[35]    Wiederhold Deposition [Doc. # 46, Exh. D], at 18.

to DPH to show that it "regarded" Plaintiff as disabled.  Hickman has failed to

establish a *prima facie* case of disability discrimination on the basis of being

"regarded as disabled" as defined by 42 U.S.C. § 12102(2)(C).

### g.    Disability Analysis:  Conclusion

Hickman therefore has failed to establish that she has a disability under any of

the three definitions provided by the ADA.  42 U.S.C. § 12102(2).  Therefore, she

cannot demonstrate a genuine fact issue that she is able to prove a *prima facie* case of

disability discrimination under the ADA and the TCHRA.  For this reason, DPH is

entitled to summary judgment on Plaintiff's disability discrimination claims.

### h.    Replacement by or Treatment Less Favorable than Non-Disabled Employees

Alternatively, the Court considers the fourth prong of Hickman's *prima facie*

case—that she was replaced by or treated less favorably than similarly situated non-

disabled employees.  Hickman cites to no evidence to raise a fact issue on this prong.

Plaintiff's sole comment here is that she "had Declarations and Deposition testimony

that showed that no other sales assistant was terminated for not showing up while off

for medical care."[36]  Plaintiff's argument misses the mark.  To establish this element

of the *prima facie* case, Hickman must either show that she was replaced by a non-

disabled employee or that she was "treated differently under circumstances 'nearly

---

[36]    Plaintiff's Surreply to Defendant's Summary Judgment Motions [Doc. # 68], at 4.

identical' to [hers]." *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). Thus Hickman needs to demonstrate that Defendant DPH permitted at least one other DPH sales assistant at a DPH residential community to continue to work (*i.e.*, not to have "voluntarily resigned") although she violated the "no call-no show" policy on two occasions close in time. Having failed to make this showing, Hickman has not established a genuine fact issue on the fourth prong of a *prima facie* case of disability discrimination.

## I.   Disability Discrimination: Conclusion

Because Hickman has failed to establish a genuine fact issue on two of the four elements necessary for a *prima facie* showing of disability discrimination under the ADA and the TCHRA, the Court does not reach the balance of the *McDonnell Douglas* test. DPH is entitled to summary judgment on Hickman's disability discrimination claims.

## 2.   Failure to Accommodate

Hickman next alleges that DPH unlawfully failed to accommodate her disabilities, as required under the ADA and TCHRA.[37] Under the ADA, an employer "discriminates" against an employee if it fails to "make[] reasonable accommodations

---

[37]   *See supra* note 14; *see also Talk*, 165 F.3d at 1024 n.4 (conducting a single analysis under the ADA to evaluate the plaintiff's ADA and TCHRA failure to accommodate claims).

to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."  42 U.S.C. § 12112(b)(5)(A).[38]  An ADA plaintiff in a failure to accommodate claim must qualify as an individual with a disability, *see Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir. 2001), and must also "show that the employer knew, or should have known, of such employee's substantial physical or mental limitation."  *Taylor v. Principal Fin. Group*, 93 F.3d 155, 164 (5th Cir. 1996); *see also Seaman*, 179 F.3d at 300 ("Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability,

---

[38]      "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.  Once such a request has been made, the appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability."  *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (citing 29 C.F.R. § 1630.9, App. (1995)).  "Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."  *Taylor*, 93 F.3d at 165.  "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one."  *Id.*  However, "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."  *Cutrera*, 429 F.3d at 112 (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).  Moreover, "[a]n employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended."  *Cutrera*, 429 F.3d at 113; *see also Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (collecting cases).

but also of the physical or mental limitations resulting therefrom." (internal citations omitted)). As discussed in the preceding sections of this Memorandum, Hickman has not demonstrated she can prove she is a person with a legally viable "disability" under the ADA, the threshold question. *Talk*, 165 F.3d at 1024 (the ADA "confers a special meaning to the term 'disability.'"). Hickman's failure to accommodate claim thus fails as a matter of law, and Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim.

### 3.    Retaliatory Discharge

Hickman also claims that DPH violated the ADA and TCHRA[39] when it allegedly terminated her employment in retaliation for her involvement in a protected activity.

As a preliminary matter, DPH contends that Hickman failed to plead this claim and thus, that it is not cognizable on summary judgment. *See Cutrera*, 429 F.3d at 113 ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). DPH relies on an apparent discrepancy between Hickman's EEOC charge of discrimination,

---

[39]    *See supra* note 14; *see also Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (conducting an analysis under Title VII to evaluate the plaintiff's TCHRA retaliation claim).

which contains express allegations of discrimination and retaliation,[40] and her complaint in this lawsuit, which arguably includes only the discrimination charge. The factual narrative in Hickman's federal court Original Complaint strongly suggests that she is pleading a retaliation claim, but she mentions a retaliation claim *only* in the section titled "Procedural Requisites," where she alleges she "filed an EEOC charge of disability discrimination and retaliation."[41]   Hickman did not attach the EEOC charge to her complaint, nor did she incorporate its contents by reference.

"The function of a complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the plaintiff relies." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000). "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." FED. R. CIV. P. 15(b)(2). This rule applies at the summary judgment stage, as well as at trial. *See, e.g.*, *United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987). "Thus, when both parties squarely address[] [a claim] in their summary judgment briefs, it may be argued that the complaint was constructively amended." *Handzlik v. United States*,

---

[40]    Plaintiff's Response [Doc. # 56], Exh. H: "EEOC Charge of Discrimination."

[41]    Plaintiff's Original Complaint [Doc. # 1], ¶ 13.

93 F. App'x 15, 17 (5th Cir. 2004) (citing *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998)).

DPH asserts in passing that Hickman has not pled a retaliation claim but acknowledges that that claim may be in the case.[42] This recognition is well founded. The facts alleged by Hickman in her Original Complaint suggest she intends to include a retaliation claim. Hickman's EEOC charge, which Defendant received, further supports this inference. The parties arguments during discovery hearings in this case demonstrate DPH understood Hickman to assert a retaliation claim in this Court.[43] In addition, it appears that the parties conducted discovery pertaining to such a claim. Thus, DPH had fair notice of Hickman's federal court retaliation claim and the parties impliedly consented to litigation of it.

On the merits of the retaliation claim, the issue is whether Hickman has established a genuine question of material fact that her employment with DPH was terminated due to her involvement in a protected activity under the ADA. Retaliation claims brought under the ADA are analyzed using the *McDonnell Douglas* burden-

---

[42]   *See* Defendant's Motion for Summary Judgment [Doc. # 46], ¶ 34 ("While it is unclear from her Complaint whether Hickman has brought a retaliation claim under the ADA and TCHRA, and [DPH] does not concede that she has actually alleged a retaliation claim, out of an abundance of caution, [DPH] will show the Court why a retaliation claim would wholly fail as well.").

[43]   *See* Recording of Pretrial Hearing of February 28, 2008, at timestamp 2:06:58–2:07:05.

shifting test applied to Hickman's disparate treatment discrimination claim. First, Hickman must establish a *prima facie* case of retaliation. If she is successful, the burden shifts to DPH to articulate a legitimate, non-discriminatory reason for the challenged employment action. If DPH does so, Hickman must demonstrate that the proffered reason is pretextual. *See Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316–17 (5th Cir. 2007) (citing *Sherrod*, 132 F.3d at 1121–22). In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in an activity protected by the ADA; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Seaman*, 179 F.3d at 301. Importantly, "in order to prosecute an ADA retaliation claim, [the] plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief [by the plaintiff] that the statute has been violated suffices." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 & n.1 (5th Cir. 2008) (citing *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001); *Krouse v. Am. Sterilizer*, 126 F.3d 494, 502 (3d

Cir. 1997)); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155

(2d Cir. 1999).

### a.    Engaging in a Protected Activity

DPH does not contest that Hickman's request for accommodations qualifies as

a protected activity under the ADA. Hickman satisfies the first element of her *prima*

*facie* case. *See Jenkins*, 487 F.3d at 317 n.3 (5th Cir. 2007) (holding that a request for

accommodations qualifies as a "protected activity" for the purposes of a retaliation

claim).

### b.    Adverse Employment Action

The parties strenuously dispute whether Hickman suffered an "adverse

employment action" under the second prong of the retaliation *prima facie* analysis.

In this context, an adverse employment action is defined as something that "a

reasonable employee would have found . . . materially adverse." *Burlington Northern*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This requires a showing that the

challenged conduct "well might have dissuaded a reasonable worker from [engaging

in the protected activity]." *Id.* (substitution in the original). There is no dispute that

termination of employment constitutes an adverse employment action. *See, e.g.*,

*Sherrod*, 132 F.3d at 1122; *see also Grubic v. City of Waco*, 262 F. App'x 665, 667

(5th Cir. 2008). The parties debate whether Hickman was terminated or whether she

voluntarily resigned when she allegedly violated the company's "no call-no show" policy by not coming to work for two days and failing to call the correct individual in management, specifically Kevin Wiederhold, each day she was absent.[44]

Hickman has amply established that she did not choose to stop working with DPH in December 2005.  Although DPH disagrees, from Hickman's perspective, it was DPH that construed the events in its own favor in order to terminate her employment.[45]  There is a genuine fact issue on the adverse employment action prong of the retaliation *prima facie* test.

### c.    Causal Connection

The Court also finds that substantial questions of fact exist on the third prong of the *prima facie* test—the existence of a causal link between the protected activity and the adverse employment action.  The burden of establishing this "causal link"

---

[44]    DPH's attendance policy states:

> [A]n employee must notify his/her supervisor as far in advance as possible, but not later than one hour before his/her scheduled starting time if he/she expects to be late or absent.  This policy applies for each day of his/her absence.  An employee who fails to contact his/her immediate supervisor two times ("no call-no show") will be considered as having voluntarily resigned.

Defendant's Motion for Summary Judgment [Doc. # 46], Exh. A: "Business Records, at Bates No. DPH000073.

[45]    *See infra* at 42–43 for parties' contentions about DPH's application of its "no call-no show" policy to Hickman.

element of a *prima facie* case is much less onerous than the standard for proving

"but-for" causation required for the determination of the ultimate issue of retaliation.

*Sherrod*, 132 F.3d at 1122 n.8.  In evaluating the "causal link" element of a retaliation

claim, the Court focuses on three factors:   "(1) the extent of the employee's

disciplinary record; (2) whether the employer followed its policies and procedures in

dismissing the employee; and (3) the temporal relationship between the protected

action and the termination."  *Bacon v. EDS*, 219 F. App'x  355, 357 (5th Cir. 2007)

(citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)); *see also*

*Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) ("A 'causal link' is

established when the evidence demonstrates that the employer's decision to terminate

was based in part on knowledge of the employee's protected activity . . . [such as

where] the plaintiff shows that the employment decision and [her] protected activity

were not wholly unrelated."  (internal citations omitted)).

A causal connection may be inferred from evidence that the protected conduct

was closely followed by the adverse employment action, so long as "the temporal

proximity [is] 'very close.'"  *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74

(2001).  In this case, Hickman presented evidence that her alleged termination on

December 16 occurred merely fifteen days after her written request for

accommodations, that she received her first written reprimand only seven days after

her request, and that DPH departed from company policy when it made her continued employment contingent upon sales goals.[46]  Given this series of events, a reasonable juror could conclude that Hickman suffered an adverse employment action due to her participation in a protected activity.  *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) ("In order to withstand summary judgment, [plaintiff] must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action.").  Hickman has presented sufficient proof that she can make a *prima facie* case of retaliation.  Therefore, the burden shifts to DPH to articulate a legitimate, non-discriminatory reason for the challenged employment action.

### d.      Defendant's Legitimate, Non-Retaliatory Reason

DPH's burden at the summary judgment stage is one of production, not proof. DPH may meet this burden "through the introduction of admissible evidence, reasons for its action which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action."  *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)).  DPH urges that Hickman "voluntarily resigned"

---

[46]    Kevin Wiederhold has testified that selling homes was the direct responsibility of the sales consultant.  *See* Wiederhold Deposition [Doc. # 46, Exh. D], at 15–16.

from her position by violating the "no call-no show" policy[47] when she failed on two successive days to tell Wiederhold, the company's Sales Manager, who DPH contends was Hickman's direct supervisor, she would be absent. DPH contends that Hickman's calls to Bob Svoboda or co-workers (instead of Wiederhold) about her absences were insufficient notice under the "no call-no show" policy. This explanation is sufficient to satisfy DPH's burden.[48]

### e.    Pretext

For summary judgment purposes, Hickman must next demonstrate that a material issue of fact exists about whether DPH's explanation is pretextual. To meet this burden Hickman must demonstrate that she would have been retained "but for" engaging in the protected activity. *Septimus*, 399 F.3d at 608; *Pineda*, 360 F.3d at 487. Hickman must reveal a "conflict in substantial evidence on the ultimate issue of retaliation," meaning evidence of "such quality and weight that reasonable and fair minded person in the exercise of impartial judgment might reach different conclusions." *Sherrod*, 132 F.3d at 1122 (internal citations omitted). The Court

---

[47]    "An employee who fails to contact his/her immediate supervisor two times ("no call-no show") will be considered as having voluntarily resigned." Defendant's Motion for Summary Judgment [Doc. # 46], Exh. A: "Business Records, at Bates No. DPH000073.

[48]    *See also id.* at 48 (explaining reasons why, assuming that she voluntarily resigned, that Hickman was not reinstated, including *inter alia* "we just didn't feel like we could rely on her, and we felt like the trust was broken").

concludes that questions of fact exist whether DPH's proffered reason for its decision to end Hickman's employment is pretext for an actual retaliatory purpose.

In applying its "no call-no show" policy, DPH acknowledges Hickman contacted Bob Svoboda, the Crighton Ridge Sales Consultant, and/or other Crighton Ridge employees to report that she would be out both days and to get someone to cover her duties. The threshold issue is who was Hickman's supervisor. Hickman presents proof, when the evidence is construed in her favor for summary judgment purposes, that she complied with the company's "no call-no show" policy. Hickman perceived the on-site Crighton Ridge sales consultant to be her supervisor. Originally, this individual was Bill Oldham,[49] who hired her and who for almost two years oversaw her work and approved her time off. She further testified that Wiederhold told her that Svoboda, the Crighton Ridge sales consultant who replace Oldham, would be her new supervisor.[50] Hickman also has provided a copy of the DPH "Host/Hostess Guide" she received when hired and which "is intended to serve as a guideline which will enable the host or hostess to effectively execute the duties and responsibilities of the DPH Homes sales office."[51] The Guide states that hostesses such as Hickman are responsible *inter alia* for completing "[o]ther duties as assigned

---

[49]     Hickman Deposition [Doc. # 46, Exh. B], at 91.

[50]     *Id.* at 137, 142.

[51]     Plaintiff's Response [Doc. # 56], Exh. A-1: "Host/Hostess Guide."

by the Sales Consultant."  It further directs hostesses to "fill out a time sheet for each week that they work [and] [t]urn it in to the Sales Consultant for approval and forwarding to the Corporate Office . . . ."[52]  Given this evidence, the Court concludes there is a genuine question of material fact about the identity of Hickman's supervisor, and thus whether Hickman properly gave DPH notice of her absences.  whether the company in fact deemed her to have "resigned" her position by failing to properly follow company notification policies.  There is, accordingly, a genuine, material fact issue whether DPH's explanation for the termination of Hickman's employment was pretext for retaliation.  *See Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (plaintiff may satisfy her burden "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.").[53]  DPH's summary judgment motion is denied on Plaintiff's ADA and TCHRA retaliatory discharge claims.

## B.   FMLA Claims

Hickman next alleges that DPH violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* by refusing to recognize her two-day

---

[52]   *Id.*  DPH's position that is that Hickman has offered only her subjective belief as to the identity of her supervisor is unsupported.

[53]   There may be another fact issue about whether, even if Svoboda was Hickman's supervisor, she timely contact him or whether the finding of a replacement for the day is sufficient.

absence in December 2005 as FMLA leave and by terminating her as a result of these absences.  Under the FMLA, "an eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 workweeks in any 12-month period when the employee has 'a serious health condition that makes [her] unable to perform the functions of [her] position.'"  *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (quoting 29 U.S.C. § 2612(a)(1)(D)).  The FMLA also protects employees from interference with leave under the Act, and from retaliation for exercising his or her rights under the Act.  *Id.*

Hickman claims that DPH interfered with her rights under the FMLA and terminated her employment in retaliation for her exercise of those rights.

### 1.    Interference with FMLA Leave

DPH's motion does not address Hickman's FMLA interference claim,[54] but its Reply to Plaintiff's Responses to its Motion for Summary Judgment does.  The Court therefore addresses the issue.

Hickman has raised a genuine fact question whether DPH interfered with her attempt to take FMLA leave.  Hickman has testified that DPH told her that she had to

---

[54]    Hickman alleged in her Original Complaint that DPH "violated the FMLA with respect to her in the following and other respects: . . . (b) by interfering with, restraining or denying plaintiff's exercise or her attempts to exercise her rights provided by the FMLA . . . ."  Plaintiff's Original Complaint [Doc. # 1], ¶ 43.  This language directly tracks 29 U.S.C. § 2615(a)(1), the interference provision of the FMLA.

fill out a specific DPH form prior to taking medical leave; that DPH promised to send the required form to Hickman; and that despite a series of requests between January 2005 and November 2005, DPH repeatedly failed to provide her the forms.[55]  Thus, there are genuine material questions of fact and summary judgment on Plaintiff's FMLA interference claim is denied.

### 2.        Retaliation for Requesting or Using FMLA Leave

The FMLA makes it unlawful for an employer to discharge an employee for exercising or seeking to exercise the benefits conferred by the FMLA.  29 U.S.C. § 2615(a)(2).  To establish a *prima facie* case for retaliation under the FMLA, Hickman must demonstrate that (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and (3) either (a) she was treated less favorably than an employee who had not requested FMLA leave, or (b) the adverse employment decision was made because of her request for FMLA leave.  *Bocalbos*, 162 F.3d at 383.  If Hickman establishes a *prima facie* case, the burden shifts to DPH to articulate a legitimate, non-retaliatory reason for terminating Hickman.  *Id*.  If DPH does so, the burden shifts back to Hickman to establish, by a preponderance of the evidence, that the articulated reason is a pretext for retaliation.  *Id*.

### a.        Prima Facie Case

---

[55]        Hickman Deposition [Doc. # 46, Exh. B], at 275–77.

   ***Protected under the FMLA.***  The first issue here is whether Hickman was

protected under the FMLA.  The employee must demonstrate that (a) she is suffering

from a qualifying condition, and (b) she provided her employer with adequate notice

of her intention to take FMLA leave.  An employee is entitled to FMLA leave for *inter*

*alia* a "serious health condition that makes the employee unable to perform the

functions of the position of such employee."[56]  29 U.S.C. § 2612(a)(1)(D) (2006).  A

"serious health condition" is further defined as an "illness, injury, impairment, or

physical or mental condition that involves" inpatient care (*i.e.*, an overnight stay) in

a medical care facility or continuing treatment by a health care provider.  29 C.F.R.

§ 825.114(a) (2006).  Hickman did not receive inpatient care, and relies on the

"continuing treatment" alternative.   The regulations enumerate five different

definitions of "serious health conditions" involving "continuing treatment."  The only

one relevant in this case is: "[a]ny period of incapacity or treatment for such

incapacity due to a chronic serious health condition."  *Id.* § 825.114(a)(2)(iii).  Such

a chronic health condition requires the employee to make periodic visits for treatment

and must continue over an extended period of time; however, it may cause episodic

---

[56]    There is no dispute that Hickman is an eligible employee under the FMLA who
worked with DPH on a full-time basis from September 2003 until December 2005,
more than the statutorily required twelve months.  *See* 29 U.S.C. § 2611(2) (2006).

periods, rather than a continuing period, of incapacity (*e.g.*, asthma, diabetes, and epilepsy). *Id.*

The legislative history of the FMLA suggests that Congress sought to distinguish short-term conditions that would generally be covered under sick leave policies from more severe health conditions that would be covered under the FMLA. *See* 58 Fed. Reg. 31,799 (1993) ("Congressional reports indicate that this term is not intended to cover short-term conditions for which treatment and recovery are very brief, since such conditions would generally be covered by employers' sick leave policies").  One district court found that rectal bleeding "falls short of the sort of chronic serious health problems such as diabetes and epilepsy within the purview of the FMLA."  *See Bauer v. Dayton-Walther Corp.*, 910 F. Supp. 306 (E.D. Ky. 1996). Hickman has presented records of Dr. Ayub Hussain indicating that she returned for follow-up examinations/treatments at least four times subsequent to the December 2005 treatment.[57]  Construing the medical and other evidence in the light most favorable to Plaintiff, the Court concludes that there is a genuine fact issue regarding whether, at the time Hickman ceased employment at DPH, she was suffering from a serious health condition involving continuing treatment.  While this FMLA issue is an extremely close question, this issue is better resolved at trial.

---

[57]     *See* Plaintiff's Response [Doc. # 56], Exh. A-7: "Excerpts of Medial Records with Dr. Hussein," at 12–16.

Assuming *arguendo* that Hickman was suffering from a qualifying serious health condition, the second step of the inquiry is whether she provided DPH with adequate notice of her intention to take FMLA leave. The FMLA distinguishes between "foreseeable" and "unforeseeable" leave. *See* 29 U.S.C. § 2612(e)(2)(B). Hickman testified that she did not foresee needing emergency medical procedures on her last day in the office, December 12, 2005.[58] Defendant does not proffer persuasive evidence that the treatment Plaintiff received on December 15 and 16 was foreseeable. Plaintiff thus raises a fact issue that her leave was unforeseen.

The FMLA notice requirement for unforeseeable leave is that an employee must give notice to her employer "as soon as practicable under the facts and circumstances of the particular case." *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007); *see also* 29 C.F.R. § 825.302.[59] Nevertheless, the Fifth Circuit has held that the FMLA requires an employee seeking unforeseeable leave to provide

---

[58]   Plaintiff's Response [Doc. # 56], Exh. A: "Declaration of Pamela Miles-Hickman," ¶ 21; Hickman Deposition [Doc. # 46, Exh. B], at 286 ("[i]t was a medical emergency . . .").

[59]   Defendant's FMLA policy is consistent with this rule. The policy states that "[w]hen the timing of the leave is not foreseeable, the employee must provide [DPH] with notice of the need for leave as soon as practicable." Defendant's Motion for Summary Judgment [Doc. # 46], Exh. A: "Business Records," at Bates No. DPH000062. Defendant's policy further states that "[i]f the employee has not notified [DPH] of the reason for the leave, and the employee desires that leave be counted as FMLA leave, the employee must notify Human Resources within 2 business days of the employee's return to work that the leave was for an FMLA reason." *Id.* at Bates No. DPH000064.

enough information "sufficient to reasonably apprise [the employer] of the employee's request to take time off for a serious health condition." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998), *cert. denied*, 525 U.S. 826 (1998) (quoting *Manuel*, 66 F.3d at 764). "While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Id.* at 980 (quoting *Johnson v. Primerica*, 1996 WL 34148, at *5 (S.D.N.Y. Jan. 30, 1996).

An employee is not required to expressly invoke the FMLA. *Greenwell*, 486 F.3d at 842; *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). Determining whether an employee properly notified an employer of her desire to take FMLA leave necessarily involves a factual inquiry. The Fifth Circuit has stated that "[w]e decline to announce any categorical rules for the content of the notice by an employee." *Id.* Rather, the issue of notice is a fact issue that normally should be left to a jury. *Satterfield*, 135 F.3d at 977. This does not mean, however, that summary judgment is "not an available means for resolving FMLA notice questions." *Id.*

Hickman notified Ruth Dillon, a part-time sales associate, on December 14, 2005, that she was "experiencing bleeding and stomach pains," and asked Dillon to "fill in for her during her emergency procedures."[60]   Dillon testified that, while

---

[60]     Plaintiff's Response [Doc. # 56], Exh. E: "Declaration of Ruth Dillon," at 2.

performing Hickman's duties at the office, she "informed Ms. Fusco that [she] was filling in for Pamela Miles Hickman [sic] who was having emergency medical procedures."[61]  Dillon also testified that on December 16, 2005, Fusco came to the Crighton Ridge office and "began to ask [Dillon] many questions about when [she] first became aware of Ms. Miles-Hickman's need for emergency surgery or emergency procedures or for medical care."[62]  DPH's FMLA duty to inquire was triggered when Fusco, the Human Resources Director, had this conversation with Dillon.  At this time, DPH was on notice that Hickman may have been requesting, or would shortly thereafter request, FMLA leave.  Plaintiff has raised a genuine fact issue on the adequacy and timeliness of the notice given to Defendant of the need for FMLA leave.

*Adverse Employment Decision.*  As discussed above, there is a genuine fact issue whether Hickman suffered an adverse employment decision.  Therefore, Hickman has satisfied her burden on the second prong of the FMLA retaliation *prima facie* case.

*Treated Less Favorably or Causal Connection.*  Turning to the third prong of the FMLA retaliation *prima facie* case, a plaintiff must show either that she was

---

[61]     *Id.* at 3.

[62]     *Id.*

treated less favorably than an employee who had not requested FMLA leave or that the adverse employment decision was made because of her request for FMLA leave. Hickman has not presented evidence raising a genuine fact issue that she was treated less favorably than an employee who had not requested FMLA leave.  Plaintiff's sole comment on this prong of the analysis is that she "had Declarations and Deposition testimony that showed that no other sales assistant was terminated for not showing up while off for medical care."[63]  Plaintiff cites to no evidence and this unsubstantiated assertion is insufficient to raise a genuine issue of material fact on this prong of the *prima facie* case.  *See Little*, 37 F.3d at 1075 ("[I]n the absence of any proof, [the Court will not] assume that the nonmoving party could or would prove the necessary facts [to raise a genuine issue of material fact].").

On the other hand, Plaintiff Hickman does point to evidence pertaining to "causation."   The Eighth Circuit has held for FMLA retaliation claims, that "[a]lthough not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established." *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1149 (8th Cir. 2008).  The Fifth Circuit has not directly addressed the causation issue in the context of FMLA retaliation claims.  The Circuit has held, however, that

---

[63]     Plaintiff's Surreply to Defendant's Summary Judgment Motions [Doc. # 68], at 4.

temporal relationship is one factor to consider in determining if there is a causal link in an ADA retaliatory discharge case. *See Bacon*, 219 F. App'x at 357 (citing *Nowlin*, 33 F.3d at 684). There appears no reason not to apply the standard in FMLA cases. Plaintiff has offered sufficient evidence linking her termination—assuming *arguendo* that there was in fact a "termination"—to a request for FMLA leave. The adverse employment action happened while the Plaintiff was out of the office for what she has characterized as "emergency procedures." Given the sequence of events, a reasonable juror could conclude that Hickman suffered an adverse employment action—termination of employment—due to her participation in a protected activity, taking or requesting FMLA leave. Accordingly, Hickman has satisfied her burden on the third prong of the *prima facie* case.

Because Hickman has shown some evidence that might suffice for a *prima facie* case of retaliation, under *McDonnell Douglas*, the burden shifts to DPH to proffer a legitimate, non-discriminatory reason for the challenged employment action.

### b.  Defendant's Legitimate, Non-Retaliatory Rationale

As discussed above, DPH has presented competent summary judgment evidence that Hickman's employment ended because she allegedly failed to comply with DPH's attendance and notification policies.[64]

### c.  Pretext.

Because DPH has satisfied its burden of articulating a reason for its conduct, Hickman must demonstrate that a material issue of fact exists as to whether DPH's explanation is pretextual.  The questions about causation for DPH's actions as well as the adequacy of Hickman's notice of her desire for FMLA leave, overlap with the issue of whether DPH's explanation for Hickman's employment termination (or voluntary resignation) is pretext for an actual retaliatory purpose.  The Court concludes that questions of fact exist and summary judgment on Plaintiff's FMLA retaliation claim is denied.

### C. **ERISA Claims**

Hickman contends that DPH violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. § 1001 *et seq.*, when it allegedly terminated her in retaliation for exercising her right to health benefits and interfered

---

[64] *See also id.* at 48 (explaining reasons why, assuming that she voluntarily resigned, that Hickman was not reinstated, including *inter alia* "we just didn't feel like we could rely on her, and we felt like the trust was broken").

with her entitlement to future benefits.  Hickman claims the protection of 29 U.S.C.

§ 1140, which makes it "unlawful for any person to discharge, fine, suspend, expel,

discipline, or discriminate against a participant or beneficiary for exercising any right

to which he is entitled under the provisions of an employee benefit plan . . . or for the

purpose of interfering with the attainment of any right to which such participant may

become entitled under the plan . . . ."  *See Heimann v. National Elevator Industry*

*Pension Fund*, 187 F.3d 493, 503 (5th Cir. 1999).  Section 1140 consists two

components: (1) an anti-retaliation component, which prohibits an employer from

retaliating against an employee for exercising  ERISA rights; and (2) an anti-

interference component, which prohibits an employer from interfering with an

employee's future rights to benefits.  *Kirby v. SBC Servs., Inc.*, 391 F.Supp.2d 445,

455 (N.D. Tex. 2005).

### 1.    Retaliation

To establish a *prima facie* claim of retaliation under § 1140, Hickman must

establish that DPH fired her in retaliation for exercising an ERISA right or to prevent

attainment of benefits to which she would have become entitled under an employee

benefit plan.  *Holtzclaw*, 255 F.3d at 260 (citing *Rogers v. Int'l Marine Terminals,*

*Inc.*, 87 F.3d 755, 761 (5th Cir. 1996)).  Specific discriminatory intent is an essential

element of Hickman's claim.   *Rogers*, 87 F.3d at 761; *see also Kouvchino v.*

*Parametric Tech. Corp.*, 537 F.3d 62 (1st Cir. 2008) ("[W]ithout a specific intent requirement, every terminated employee who has exercised his or her right to benefits would, ipso facto, have a potential retaliation claim against the employer. That would destroy ERISA's carefully calibrated balance of rights, remedies, and responsibilities in the workplace." (internal citations omitted); *McGann v. H&H Music Co.*, 946 F.2d 401, 404 (5th Cir. 1991)).

Hickman broadly alleges that DPH "delayed and repeatedly refused to allow Plaintiff medical leave in order to have a hysterectomy under her medical insurance plan."[65]  The Court concludes that as a matter of law Hickman has not established a *prima facie* claim of retaliation.  Hickman failed to offer evidence that DPH acted with specific discriminatory intent, an essential element of her claim.  Therefore, DPH is entitled to summary judgment on Plaintiff's ERISA retaliation claim.

## 2.   Interference

To establish a *prima facie* claim of interference, Hickman must establish "(1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled.  *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003).  It is not disputed that Hickman was a participant and beneficiary of DPH's Health Benefits Plan at the times she claims

---

[65]     Plaintiff's Response [Doc. # 56], at 29.

DPH interfered with her ERISA rights.  For the reasons discussed previously, Hickman has raised a genuine fact issue as to whether there was an adverse employment action.  However, Hickman has not raised a genuine fact issue that the alleged refusal to grant leave for a hysterectomy was taken with specific intent to interfere with Hickman's ERISA rights.  Fusco's request that Hickman obtain a second opinion from Dr. Carlos Ramos is not sufficient to raise a genuine fact issue. Under Fifth Circuit authority, Fusco's caution was not unreasonable or an inappropriate response to an employee's claim for benefits.  *See Kouvchino*, 537 F.3d at 68 ("ERISA does not impose upon an employer a duty to buy a pig in a poke, and caution is a far cry from discriminatory animus").  Having failed to present evidence to support a *prima facie* case of interference, DPH is entitled to summary judgment on Hickman's ERISA interference claim.

### D.   COBRA Claim

Hickman contends that following her separation from DPH's employ, the company failed to offer her continuation of her health insurance benefits on a timely basis, as required by the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, a part of ERISA.  Hickman contends that DPH improperly delegated to a third party (InfiniSource, Inc.) the responsibility to provide notice of COBRA benefits, and that DPH (and its designee) failed to give post-

employment notice to her within the 44-day time period provided by law.[66]  Hickman further claims that her benefits were discontinued and that she incurred medical bills that should have been covered by her health insurance plan.  Hickman characterizes the company's conduct as "bad faith" and seeks to recover civil penalties, reimbursement for her and her son's medical bills, and her attorneys' fees associated with this claim.[67]  DPH responds that (i) it complied with the COBRA notice provisions in good faith; (ii) if it did not comply, the Court should exercise its discretion to find that Hickman is not entitled to any recovery of penalties; (iii) in any event, Hickman cannot recover her medical expenses based on the summary judgment evidence, and (iv) the Court should exercise its discretion to deny Hickman recovery of attorneys' fees.  The uncontradicted evidence of record establishes that DPH told Hickman generally about her entitlement to COBRA coverage, but did not give her

---

[66]     Plaintiff's Mem. [Doc. # 43-2], at 14.  *See* 29 U.S.C. § 1166(a), (c).

[67]     Hickman appears to allege a claim for intentional infliction of emotional distress for the violation of COBRA.  *See* Plaintiff's Original Complaint [Doc. # 1], ¶ 48.  Such a claim is not cognizable, as COBRA preempts state and common law claims seeking recovery as a result of conduct "related to any employee benefit plan."  *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1335–37 (5th Cir. 1992); *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir. 1990).  To the extent Hickman brings such a claim, it is **dismissed**.

the detailed notice required by federal regulations until July 3, 2006, 199 days after

her employment with Defendant ceased.[68]

### 1.   COBRA Notice Violation

COBRA was enacted "to provide employees with an opportunity to continue

to receive group health insurance after the occurrence of a 'qualifying event.'" *Myers*

*v. King's Daughters Clinic*, 912 F. Supp. 233, 237 (W.D. Tex. 1996), *aff'd,* 96 F.3d

1445 (5th Cir. 1996).  Therefore, COBRA "require[s] an employer who sponsors a

group health plan to give the plan's 'qualified beneficiaries' the opportunity to elect

'continuation coverage' under the plan when the beneficiaries might otherwise lose

coverage upon the occurrence of certain 'qualifying events,' including the death of the

covered employee, the termination of the covered employee's employment (except in

cases of gross misconduct), and divorce or legal separation from the covered

employee." *Geissal v. Moore Medical Corp.*, 524 U.S. 74, 79–80 (1998) (citing 29

U.S.C. § 1163); *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002).

"COBRA demands that the continuation coverage offered to qualified beneficiaries

be identical to what the plan provides to plan beneficiaries who have not suffered a

qualifying event." *Geissal*, 524 U.S. at 80 (quoting 29 U.S.C. § 1162(1)).

---

[68]     *See* Plaintiff's Mem. [Doc. # 43-2], at 4–5 & Exhibits A-1 and A-2; Defendant's
COBRA Response [Doc. # 50], ¶ 3 ("Hickman knew on December 16, 2005, that she
would be sent further information regarding COBRA from InfiniSource and that she
was eligible for COBRA."); Hickman Deposition [Doc. # 46, Exh. B], at 234–35.

Significantly, "the statute requires plans to advise beneficiaries of their rights under COBRA both at the commencement of coverage and within 14 days of learning of a qualifying event." 29 U.S.C. § 1166(a); *see Degruise*, 279 F.3d at 336.  Under § 1166(a)(2), an employer has a duty to report most qualifying events, including the termination of employment, to its group health plan administrator within 30 days of the qualifying event.  The plan administrator must then notify the qualified beneficiary within 14 days of being notified of the qualifying event by the employer.  29 U.S.C. § 1166(c).  When an employer is also the administrator of the health plan, the employer must give detailed written notice of the availability of COBRA benefits within 44 days after the date of the qualifying event, which includes termination other than for gross misconduct.  *See* 29 C.F.R. § 2590.606-4(b)[69]; *Roberts v. National Health Corp*., 963 F.Supp. 512, 515 (D.S.C 1997) ("Granting an employer/administrator forty-four days [from the date of the qualifying event] to deliver the COBRA notice will not harm the employee, because, were an employee

---

[69]   In pertinent part, 29 C.F.R. § 2590.606-4(b) ("Notice of right to elect continuation coverage") provides:

> (2)  In the case of a plan with respect to which an employer of a covered employee is also the administrator of the plan, . . . the administrator shall furnish to each qualified beneficiary a notice meeting the requirements of paragraph (b)(4) of this section not later than 44 days after . . . the date on which the qualifying event occurred.

The notice must be in writing.  29 U.S.C. § 1163; 29 C.F.R. § 2590.606(c).

to choose continuation coverage, the first premium would apply retroactively to provide continuous coverage from the date of the qualifying event."). "The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002) (citing *Meadows v. Cagle's, Inc.,* 954 F.2d 686, 692 (11th Cir.1992)).   After notification, qualified beneficiaries have 60 days to elect continuation coverage.  *Id.* § 1165(1); *see Geissal*, 524 U.S. at 80.  If a qualified beneficiary makes a COBRA election, continuation coverage dates from the qualifying event, and when the event is termination or reduced hours, the maximum period of coverage is generally 18 months. 29 U.S.C. § 1162(2)(A). "The beneficiary who makes the election must pay for what he gets, however, up to 102 percent of the "applicable premium" for the first 18 months of continuation coverage, and up to 150 percent thereafter. *Id.* § 1162(3).  The "applicable premium" is usually the cost to the plan of providing continuation coverage, regardless of who usually pays for the insurance benefit. *Id.* § 1164.

DPH concedes that, as a matter of law, it is the plan administrator for its employees.[70] Furthermore, the parties agree that Hickman's separation from DPH was a qualifying event, that she was not terminated for "gross misconduct," and that she

---

[70]     Defendant's COBRA Response [Doc. # 50], ¶ 10.

was entitled COBRA benefits, if she elected to receive them. Therefore, DPH was obligated to provide Hickman with detailed written notice of the availability of COBRA benefits within 44 days of the separation, that is, by January 29, 2006, at the latest.  There is no evidence that DPH, or anyone else, gave[71] the required detailed notice to Hickman until 199 days after Hickman's employment ended, making the notice 155 days late.[72]

---

[71] An employer or administrator is permitted to delegate giving post-termination notice to a third party.  However, the employer or administrator will not be relieved of liability where there is no evidence the third party sent out a notice and where there is no evidence that the employer or administrator took the "necessary steps to ensure that the [third party] would, in all cases, make such notification."  *Scott*, 295 F.3d at 1231.

[72] The notice DPH eventually caused to be given met the statutory and regulatory requirements.  *See* 29 C.F.R. § 2590.606-4(b)(4).  Federal regulations required the notice be "written in a manner calculated to be understood by the average plan participant."  *Id.*  The notice must contain *inter alia* the name of the plan, the contact person for the plan; identification of the qualified beneficiaries, the date coverage under the plan will terminate unless continuation coverage is elected; an explanation of the plan's procedures for electing continuation coverage; a description of the scope of coverage to be made available under the plan and the date on which such coverage will commence; an explanation of the maximum period for which continuation coverage will be available under the plan, if elected; a description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage; and a description of the due dates for payments.  *See id.*

In *Degruise*, 279 F.3d at 336, the Fifth Circuit stated, prior to the promulgation of § 2590.606-4(b) on May 26, 2004 (*see* 69 FR 30097 – 30103) that "'employers are required to operate in good faith compliance with a reasonable interpretation' of what adequate notice entails." *See Kidder v. H & B Marine, Inc.,* 734 F. Supp. 724, 730 n.6 (E.D. La.1990) (quoting H.R.Rep. No. 99-453, at 653 (1985)), *aff'd in part and rev'd in part,* 932 F.2d 347 (5th Cir.1991).  This Court now deems the 2004 regulation to modify the more general statement of the requirement of "good faith."  Defendant
(continued...)

DPH makes several arguments that it complied with the COBRA detailed notice requirement, but none are persuasive.  First, DPH contends that the notice given to Hickman when she began employment was sufficient to inform her of her COBRA rights after she ceased employment.  This argument is without legal support and is rejected based on the authorities cited above.  DPH next argues that it attempted in "good faith" to comply with the COBRA notice provisions[73] in that it mentioned in its termination letter that Hickman would be eligible for COBRA and stated therein that she "will be sent notification directly from InfiniSource ([DPH's] COBRA outsource company)."[74]  This explanation was patently insufficient for the detailed notice required under applicable federal regulations.[75]  Accordingly, Hickman has conclusively established that DPH failed to timely send her the detailed post-termination COBRA notice, and Hickman is entitled to judgment in her favor on this issue.

---

[72]     (...continued)
          does not argue to the contrary.

[73]     *See* Defendant's COBRA Response [Doc. # 50], ¶¶ 11–13.

[74]     Plaintiff's Motion [Doc. # 43], Exh. B-2: "Letter of December 16, 2005, Jennifer Fusco to Pamela Miles-Hickman," at DPH 000153.

[75]     *See Scott*, 295 F.3d at 1231.

2.    **COBRA Penalties**

Plaintiff Hickman seeks recovery of a monetary penalty of $110 per day[76] from Defendant DPH for its failure to act in good faith by timely providing her with the required second notice of her COBRA rights.  DPH opposes such relief and has filed a cross motion for summary judgment contending, first, that there is no evidence that it acted in bad faith and, second, its conduct was not the cause of prejudice to Hickman.

The Court has discretion to impose a penalty for COBRA notice violations.  *See* 29 U.S.C. § 1132(c)(1); *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir. 1996); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir. 1981).  ERISA (of which COBRA is a part) provides for a penalty of up to $110 per day for failure to meet COBRA notice requirements.  The penalty provision serves as an incentive to plan administrators to meet requests for information in a timely fashion.  *Davis v. Featherstone*, 97 F.3d 734 (4th Cir. 1996). "In exercising its discretion to impose penalties for violation of notice requirements,

---

[76]    29 C.F.R. § 2575.502c-3 ("Adjusted civil penalty under section 502(c)(3)": "In accordance with the requirements of the 1990 Act, as amended, the maximum amount of the civil monetary penalty established by section 502(c)(3) of the Employee Retirement Income Security Act of 1974, as amended (ERISA), is hereby increased from $100 a day to $110 a day. This adjusted penalty applies only to violations occurring after July 29, 1997.").

the court should take into consideration the presence or absence of good faith on the employer's part in putting forth its defense."  60A AM. JUR. 2D Pensions § 776 (citing *Mlsna v. Unitel Communications, Inc.,* 41 F.3d 1124 (7th Cir. 1994); *Protocare of Metropolitan N.Y., Inc. v. Mutual Ass'n Administrators, Inc.*, 866 F. Supp. 757 (S.D. N.Y. 1994); *Tucker v. General Motors Retirement Program*, 949 F. Supp. 47 (D. Mass. 1996)); *Bartling v. Fruehauf Corp.,* 29 F.3d 1062 (6th Cir. 1994); *Holford v. Exhibit Design Consultants*, 218 F.Supp.2d 901, 908 (W.D. Mich. 2002).

"Prejudice to a plaintiff caused by an administrator's failure to supply information is also a significant factor for the court to consider in awarding penalties," 60A AM. JUR. 2d, Pensions § 776 (citing *Protocare of Metropolitan N.Y., Inc. v. Mutual Ass'n Administrators, Inc.*, 866 F. Supp. 757 (S.D. N.Y. 1994); *First Atlantic Leasing Corp. v. Tracey*, 738 F. Supp. 863 (D.N.J. 1990)), but a penalty can be imposed in the discretion of the court without a showing of actual prejudice or bad faith.  *See Godwin v. Sun Life Assurance Co. Of Canada*, 980 F.2d 323, 327 (5th Cir. 1992); *Krawczyk v. Harnischfeger Corp.*, 869 F. Supp. 613 (E.D. Wis. 1994), *aff'd*, 41 F.3d 276 (7th Cir. 1994); *Pagovich v. Moskowitz*, 865 F. Supp. 130 (S.D. N.Y. 1994); 60A AM. JUR. 2d, Pensions § 776.  "The whole intent of this discretion is, while avoiding Draconian justice, to construct a remedy which regards the violation with sufficient seriousness that it will not be repeated." *Holford*, 218 F.Supp.2d at

908.

The Court, on the basis of the entire record presented, finds that Hickman has

not shown entitlement to a penalty.  Regarding the issue of DPH's good faith or lack

thereof, DPH expressly informed Hickman in the December 16, 2005 separation letter

that she would qualify for COBRA benefits.[77]  Hickman acknowledges she was aware

of this right.[78]  In January 2006, when she needed medical treatment, she called her

insurance company, Aetna, for medical coverage.  Atena instructed her to contact

DPH.[79]  Inexplicably, she did not do so.[80]  Moreover, Hickman did nothing to

ascertain her insurance status for more than six months after her employment

termination on December 16 and almost six months after her coverage expired on

December 31.[81]  Hickman's first request directly to Defendant for COBRA

information or post-employment health coverage was through her lawyer's letter sent

on June 26, 2006 to DPH.  DPH, through its COBRA agent InfiniSource, responded

immediately upon receipt of the inquiry by sending the detailed notice to Hickman on

---

[77]   Plaintiff's Motion [Doc. # 43], Exh. B-2: "Letter of December 16, 2005, Jennifer Fusco to Pamela Miles-Hickman," at DPH 000153.

[78]   *See* Hickman Deposition [Doc. # 46, Exh. B], at 234.

[79]   *Id.* at 236.

[80]   *Id.* at 258–65, 236.

[81]   DPH *sua sponte* extended Hickman's health care coverage through the end of the month in which her employment ended.

July 3, 2006.[82]  This evidence is insufficient to establish that DPH lacked good faith in regard to giving notice to Hickman of her right to COBRA benefits.  Once DPH was notified that Hickman had not received the detailed second COBRA notice, DPH acted quickly and throughly.

As to prejudice, similarly, Hickman fails to meet her burden.  The evidence establishes that once InfiniSource sent the detailed notice, Hickman was offered continuous insurance coverage retroactively from expiration of her prior coverage (January 1, 2006) onward.  Hickman declined.[83]  Hickman states that by the time she received the detailed information in early July 2006, she owed a total of $3,467.24 in premiums, which she states she could not afford to pay in a lump sum.[84]  However, this excuse is unpersuasive to show prejudice, given that in early January 2006, she was told by Aetna that she should call DPH regarding continuation of her health benefits and Hickman provides no reason why she did not then do so.  It is also significant that Hickman's medical bills for the 18 months COBRA would have

---

[82]     *See* Plaintiff's Mem. [Doc. # 43-2], at Exh. A, A-1, A-2.

[83]     Hickman also declined to elect insurance coverage at another job.

[84]     *See* Plaintiff's Mem. [Doc. # 43-2], at 17.  Hickman states the monthly premium was $495.32, but DPH reports it to be $434.39 (which would total $3,040.73 for seven months).  *See* Defendant's COBRA Response [Doc. # 50], ¶ 22.

covered are less than the COBRA premiums she would have owed.[85]  Hickman also does not establish she sought any other payment plan for the arrearage.  Hickman does not make clear that she would have purchased the COBRA coverage had she timely been told of the details she learned belatedly.  Under all these circumstances, the Court is unpersuaded that DPH's violation caused Hickman a level of prejudice sufficient to warrant imposition of a penalty.

The Court recognizes that the purpose of the ERISA civil enforcement provisions is to put plaintiffs in the same position they would have been absent the violations.  However, here, Hickman made conscious and possibly strategic decisions not to seek the coverage in January 2006 at a time when the problem easily could have been addressed.  Hickman's decision was a not insignificant cause of the alleged prejudice from the violation.  The Court exercises its discretion to decline to award any penalty to Hickman for the COBRA notice violation in issue.  Plaintiff's Motion [Doc. # 43] on her request for penalties on her COBRA notice claim is **denied** and Defendant's Damages Motion [Doc. # 48] as to COBRA penalties is **granted**.  .

### 3.    Recovery of Medical Expenses

Hickman seeks recovery of $7,738.28 in medical bills that she states were not covered by insurance due to DPH's COBRA violation.  DPH counters that the total

---

[85]    *See* Section III.D.3 *infra*.

amount of monthly premiums owed by Hickman (regardless of when notice was given) for the 18 months of COBRA coverage was $7,819.02 (at the rate of $434.39 that DPH contends applies),[86] which sum exceeds the $7,738.28 in medical expenses claimed by Hickman.[87]  *See Geissal v. Moore Medical Corp.*, 524 U.S. 74, 84 (1998) ("the beneficiary has to pay for whatever COBRA coverage he obtains"); *Lutheran Hosp. of Indiana, Inc. v. Business Men's Assur. Co. of America*, 51 F.3d 1308, 1315 (7th Cir.1995) (an employee is "only allowed to preserve the level of coverage she determined was appropriate before her termination and was willing to pay to continue afterward").  Plaintiff does not respond to this argument.

When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to medical expenses *minus* deductibles and premiums that the beneficiary would have had to pay for COBRA coverage.  *See Fisher v. Trutech, Inc.*, 2006 WL 3791977, at *3 (M.D. Ga. 2006);  *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1042 (S.D. Ohio 2001); *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1555 n.24 (S.D.

---

[86]   If the Court were to use Hickman's suggested monthly premium figure of $495.32, then the premiums for the 18-month period would total $8,915.76.

[87]   The parties dispute the admissibility of Hickman's summary of claimed medical expenses.  The Court agrees with DPH that the medical bills are required with authentication of their source.  However, at this time, the Court does not rely on the absence of documentation for its denial of Hickman's recovery.

Ga. 1996).   Because the total of the monthly premiums exceeds Hickman's claimed

medical expenses, Hickman is not entitled to compensatory damages consisting of

unpaid medical expenses.  In this respect, Defendant's Damages Motion [Doc. # 48]

is **granted** and Plaintiff's Motion [Doc. # 43] is **denied**.

### 4.    Recovery of Attorney's Fees for COBRA Violation

Hickman seeks recovery of $13,612.50 in attorneys' fees for work on her

COBRA claim.[88]  DPH opposes this relief.  The Court in its discretion may award

attorneys' fees to a plaintiff that prevails on an ERISA claim, including on a claim of

a COBRA violation.  *See* 29 U.S.C. § 1132(g); *Wegner v. Standard Ins. Co.*, 129 F.3d

814, 820–821 (5th Cir. 1997); *Sims v. Great-West Life Assur. Co.*, 941 F.2d 368, 373

(5th Cir.1991).[89]  The Fifth Circuit suggests that the district court consider five factors

in its analysis:

(1)    the degree of the opposing parties' culpability or bad faith;

(2)    the ability of the opposing parties to satisfy an award of attorneys' fees;

(3)    whether an award of attorneys' fees against the opposing party would
        deter other persons acting under similar circumstances;

---

[88]    Plaintiff's Mem. [Doc. # 43-2], at 18–19; Plaintiff's COBRA Supplement [Doc. # 45],
        at 1 & Exh. E thereto.

[89]    Section 1132(g) provides in pertinent part: " (1) In any action under this subchapter
        (other than an action described in paragraph (2) [not here relevant]) by a participant,
        beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's
        fee and costs of action to either party."

(4)     whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)     the relative merits of the parties' positions.

*Wegner*, 129 F.3d at 821 (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980); *Todd* [*v. AIG Insur. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995)]).  "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [§ 1132(g)]."  *Id.* (citing *Bowen*, 624 F.2d at 1266).

If the Court concludes that a plaintiff is entitled to attorney's fees, the Court must "utilize the lodestar method to determine the amount to be awarded." *Lain v. UNUM Life Ins. Co. of America*,  279 F.3d 337, 348 (5th Cir. 2002) (quoting *Wegner*, 129 F.3d at 822). In so doing, the Court must assess the "reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'" *Id.* (internal footnote and citation omitted).

Under the five factor test, the Court finds that attorney's fees should not be awarded to Hickman for DPH's violation of the COBRA post-termination notice requirement.  The Court's analysis is set forth below.

### a.     Degree of the Opposing Parties' Culpability or Bad Faith

As discussed above, the Court finds that Hickman has not proven that DPH acted in bad faith in failing to provide her the second detailed post-termination COBRA notice.  Indeed, there is nothing in the record about why the detailed notice was not sent.  On the other hand, Hickman knew she had the right to continued health care under COBRA as DPH  informed her in the December 16 separation letter. Moreover, Hickman does not explain why she failed to call DPH after Aetna directed her to do so in January 2006 in connection with medical care she was seeking at that time.  Hickman is not an uneducated or unsophisticated individual.  Based on all the circumstances, this factor weighs against a fee award or is neutral.

### b.     The Ability of the Opposing Parties to Satisfy an Award of Attorneys' Fees

There is no evidence in the record on this subject.

### c.     Deterrence of Similar Conduct by Defendant

The next factor is whether an award of attorney's fees against DPH would deter DPH or others acting under similar circumstances from failing to send the detailed post-termination notice.  The Court is unpersuaded deterrence would result from a fee award here.  DPH informed Hickman generally about her right to COBRA benefits, but failed to provide detailed follow-up information.  There is no evidence that DPH made this mistake for any other former employee.  In any event, because of the first

notice, Hickkman was aware of her right generally and did not inquire further. Moreover, DPH ensured that InfiniSource provided the detailed notice as soon as the omission was brought to its attention.  This is not a case where an employer ignored requests from a former employee for information.  The Court is unpersuaded on this record that there is a need for deterrence in this case.

> **d.**      **Benefit to All Participants and Beneficiaries of an ERISA Plan or to Resolve a Significant Legal Question Regarding ERISA Itself**

There is no evidence that Hickman's recovery of attorney's fees would benefit others besides herself.  Nor has the Court adjudicated any significant legal question regarding ERISA as a result of this case.   This factor weighs against granting attorney's fees.

> **e.**      **The Relative Merits of the Parties' Positions**

The Court finds that each party has some valid and some meritless points.  This factor is neutral.

Accordingly, Hickman has not met her burden to show a good basis for an award of attorney's fees in this case.  With respect to recovery of attorney's fees for the COBRA violation, Defendant's Damages Motion [Doc. # 48] is **granted**.

## IV.    **CONCLUSION**

For all the foregoing reasons, Plaintiff's partial motion for summary judgment on COBRA claims is **granted** insofar as she conclusively proved a violation of the regulatory detailed notice requirement but is otherwise **denied**.

Defendant's motion for summary judgment on Plaintiff's disability discrimination claims, failure to accommodate claims, ERISA retaliation claim, and ERISA interference claim is **granted**.  Defendant's motion summary judgment on damages for Plaintiff's COBRA penalties claim, medical expenses claim, and claim for attorney's fees for a COBRA violation, and her claim for intentional infliction of emotional distress for COBRA violations is **granted**.

Defendant's motion for summary judgment is **denied** without prejudice on Plaintiff's ADA and TCHRA retaliatory discharge claims, FMLA interference claim, and FMLA retaliation claim.  It is therefore

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment on COBRA Claims [Doc. # 43] is **GRANTED in part** and **DENIED in part**;

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 46] is **GRANTED in part** and **DENIED in part**; and

**ORDERED** that Defendant's Motion for Partial Summary Judgment on Alleged Damages [Doc. # 48] is **GRANTED in part** and **DENIED in part**.

**SIGNED** at Houston, Texas, this 21ˢᵗ day of **October, 2008**.

_____
Nancy F. Atlas
United States District Judge