**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAMELA MILES-HICKMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0754 |
| | § | |
| DAVID POWERS HOMES, INC., | § | |
| Defendant. | § | |

**<u>OPINION</u>**

Many issues in this case were tried to a jury on December 15 to December 19, 2008.  Other issues addressed at trial are ones the Court must decide.  As to issues before the jury, the Court will address Defendant's Renewed Motion for Judgment as a Matter of Law and Renewed Motion as to Recovery of Compensatory Damages under ADA and to Remit Damages, or in the Alternative, Motion for New Trial [Doc. # 143] ("DPH's Renewed Motion"), filed by Defendant David Powers Homes, Inc. ("DPH").[1]  Upon a careful review of the evidence admitted at trial, all applicable law, and the parties' briefing on the motion, the Court concludes that DPH's Renewed Motion should be **denied**.  The Court separately makes findings of fact and conclusions of law on issues tried to the bench.

---

[1]    Plaintiff Pamela Miles-Hickman ("Hickman") has responded [Doc. # 148], and DPH has replied [Doc. # 149].

# I.   **PROCEDURAL BACKGROUND**

After her employment with Defendant David Powers Homes, Inc. was terminated in December 2005, Hickman filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and retaliation. Upon receiving a "Notice of Right to Sue" letter from the EEOC, Hickman timely filed this lawsuit, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. § 1001 *et seq*., and the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*  On October 21, 2008, the Court issued a Memorandum and Order [Doc. # 82] granting in part DPH's Motion for Summary Judgment [Doc. # 46] and dismissing several of Hickman's claims.  Four claims remained for trial: (1) retaliation under the ADA; (2) retaliation under the TCHRA; (3) retaliation under the FMLA; and (4) interference under the FMLA.

Prior to Docket Call, DPH filed a Motion to Exclude Testimony/Evidence [Doc. # 94] ("DPH's Motion to Exclude"), seeking *inter alia* to exclude all evidence supporting compensatory damages for Hickman's ADA retaliation claim.  DPH

argued that as a matter of law, compensatory damages are not available for violations of the ADA retaliation statute, 42 U.S.C. § 12203. At Docket Call, the Court expressly held that it would reserve judgment on the compensatory damages issue.

Throughout the course of pretrial proceedings, the Court repeatedly informed the parties that only certain of the outstanding claims entitled Hickman to trial by jury. The Court empaneled a jury for the claims on which Hickman was entitled.[2] Because the facts pertaining to many of the claims overlap, the Court exercised its discretion to consider the jury's verdict for advisory purposes on issues tried to the bench.

Trial began December 15, 2008. After Hickman rested her case in chief, DPH made a Motion for Judgment as a Matter of Law [Doc. # 135] ("DPH's Motion for Judgment"). The Court exercised its discretion to reserve decision until after the verdict. After one day of deliberation, on December 19, 2008, the jury returned a verdict in Hickman's favor. The jury found that DPH violated the ADA by terminating Hickman's employment because she requested accommodations for claimed disabilities. The jury decided DPH violated the TCHRA by terminating Hickman's employment because she opposed a discriminatory practice under the TCHRA. The jury awarded damages for the ADA violation but awarded nothing for

---

[2]     For example, Hickman was entitled to a jury trial on her FMLA claims. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999).

the TCHRA violation.  The jury found that DPH did not retaliate against Hickman for engaging in FMLA-protected activity and did not interfere with, restrain, or deny Hickman's right to FMLA leave or her attempt to exercise her right to FMLA leave.[3]

On December 29, 2008, and within the ten day period required by Federal Rule of Civil Procedure 50(b), DPH filed the Renewed Motion for Judgment as a Matter of Law [Doc. # 143] currently pending before the Court.

## II.   AVAILABILITY OF COMPENSATORY DAMAGES FOR ADA RETALIATION CLAIM

As a threshold issue, the Court must determine whether compensatory damages are available for an ADA retaliation claim.  This in turn dictates the legal standard the Court must apply in analyzing DPH's Renewed Motion.  DPH contends that as a matter of law, compensatory damages are not available for violations of the ADA retaliation statute, 42 U.S.C. § 12203.[4]  Hickman argues that the Fifth Circuit has not ruled that compensatory damages are not available and that Congress did not intend to deprive disability retaliation victims of compensatory damages.

---

[3]      *See* Verdict of the Jury [Doc. # 144].

[4]      DPH made this argument in its Motion to Exclude [Doc. # 94] and again in its Renewed Motion [Doc. # 143].  This argument was not raised in DPH's Motion for Judgment [Doc. # 135].  Hickman argues that DPH has waived this issue by failing to raise it in DPH's Motion for Judgment.  The Court disagrees.  At Docket Call, the Court expressly reserved making a decision on the issue until after trial.  Accordingly, DPH has not waived the issue of whether compensatory damages are available under the ADA.

Section 12203 of the ADA prohibits retaliation against an individual because she has exercised her rights under the ADA.  42 U.S.C. § 12203.  Section 12203(c) provides that the remedies available for the violation of § 12203 in the course of a person's employment are those provided by 42 U.S.C. § 12117.  Section 12117 provides that the available remedies are those provided by the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-4, e-5, e-6, e-8, and e-9.  42 U.S.C. § 12117(a).  "Section 2000e-5(g)(1) provides that a court may order certain equitable relief including, but not limited to, back pay and front pay, but the statute does not provide for compensatory or punitive damages."  *Kramer v. Banc of Am. Securities, LLC*, 355 F.3d 961, 964 (7th Cir. 2004).  None of the other provisions cited in § 12117(a) grant compensatory or punitive damages for violations.

As the Seventh Circuit explained in *Kramer*, a recent, well-reasoned opinion, "the 1991 Civil Rights Act, 42 U.S.C. § 1981a(a)(2), expanded the scope of remedies available under § 2000e-5(g)(1) in certain circumstances to provide for compensatory and punitive damages."  *Id.*  Section 1981a(a)(2) provides, in relevant part, that:

> In an action brought by a complaining party . . . against a respondent who engaged in unlawful intentional discrimination . . . under . . . [42 U.S.C. § 12112] or committed a violation of [42 U.S.C. § 12112(b)(5)], against an individual, the complaining party may recover compensatory and punitive damages . . .

42 U.S.C. § 1981a(a)(2).

Circuit and district courts are split over whether a plaintiff asserting an ADA retaliation claim for actions arising from her employment has the right to seek compensatory damages. Resolution of this issue affects the availability of trial by jury for ADA retaliation claims.

The Seventh Circuit, in *Kramer*, held that the ADA authorizes only equitable relief for ADA retaliation claims under 42 U.S.C. § 12203. *Kramer*, 355 F.3d at 961. The *Kramer* court found that the plain text of § 1981a(1)(2) was clear:

> A close reading of the plain language of § 1981a(a)(2) makes it clear that the statute does not contemplate compensatory and punitive damages for a retaliation claim under the ADA. Section 1981a(a)(2) permits recovery of compensatory and punitive damages (and thus expands the remedies available under § 2000e-5(g)(1)) only for those claims listed therein. With respect to the ADA, § 1981a(a)(2) only lists claims brought under §§ 12112 or 12112(b)(5). Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims.

*Kramer*, 355 F.3d at 965.

Citing *Kramer*, the Fourth Circuit has held in two unpublished decisions that compensatory and punitive damages are not available for ADA retaliation claims. *See Bowles v. Carolina Cargo, Inc.*, 100 F. App'x 889 (4th Cir. 2004) (unpublished); *Rhoads v. Federal Deposit Ins. Co.*, 94 F. App'x 187 (4th Cir. 2004) (unpublished). Furthermore, the majority of post-*Kramer* district court decisions have followed the

holding in *Kramer*.  *See Arredondo v. S2 Yachts*, 496 F.Supp.2d 831, 836 n.5 (W.D. Mich. 2007) (collecting cases).

On the other hand, prior to the Seventh Circuit's decision in *Kramer*, the Second, Eighth, and Tenth Circuits had affirmed awards of compensatory damages in ADA retaliation cases.  *See Muller v. Costello*, 197 F.3d 298, 315 (2d Cir. 1999); *Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189, 1196–98 (8th Cir. 2001); *Salitros v. Chrysler Corp.*, 306 F.3d 562, 577 (8th Cir. 2002); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249 (10th Cir. 1999).  These cases, however, affirmed the award of compensatory damages without expressly examining whether compensatory damages are available under the ADA.  Nothing in these opinions suggests that the parties in any of these cases argued the issue.[5]

Having reviewed the relevant provisions of the ADA, the Civil Rights Act of 1964, and the Civil Rights Act of 1991, the Court finds persuasive the reasoning in

---

[5]  The Court is aware that several post-*Kramer* district court decisions have declined to follow the holding in *Kramer*.  *Edwards v. Brookhaven Science Assocs., LLC*, 390 F.Supp.2d 225, 236 (E.D.N.Y. 2005); *Rumler v. Department of Corrections, State of Fla.*, 546 F.Supp.2d 1334, 1342–43 (M.D. Fla. 2008) ("It is not significant that Congress did not reiterate [the] link [between § 12203 and §1981a(a)(1)] in the 1991 amendments.  To do so would have been redundant as § 12203 already provided that plaintiffs claiming retaliation in the employment context could avail themselves of the same remedies as plaintiffs claiming discrimination under Title I [of the ADA]. . . . When Congress expanded the relief available under § 12117 to include legal damages, it also expanded the relief available under § 12203 by reference."); *Kotewa v. Living Independence Network Corp.*, 2007 WL 676681, at *2–*4 (D. Idaho Mar. 1, 2007).  This Court respectfully disagrees with these district courts' rulings.

*Kramer* and subsequent cases holding that compensatory and punitive damages are not available for violations of § 12203.  While this result is not free from doubt, the Court concludes it must follow the plain language of the statute, which necessarily governs when that language is clear on its face.  *See Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003).  "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 20 (1979).  The Court accordingly concludes that as a matter of law, compensatory damages are not available for violations of 42 U.S.C. § 12203, the retaliation provision of the ADA.

## III.   ANALYSIS ON RENEWED MOTION FOR JUDGMENT

Because Hickman was not entitled to recover compensatory damages under her ADA retaliation claim, she was only entitled to seek equitable remedies for that claim. *See* 42 U.S.C. § 2000e-5(g)(1).  Because she could only recover equitable remedies, Hickman had no statutory right to a jury trial on the ADA retaliation claim.[6] However,

---

[6]     "The Seventh Amendment preserves the right to a jury trial 'in Suits at common law.' U.S. CONST. amend. VII.  This right encompasses all actions in which legal rights are to be determined, as opposed to those in which only equitable rights and remedies are involved."  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 422 (5th Cir. 1998). "Title VII actions are entirely equitable actions and back pay awards therein are strictly equitable remedies."  *Cimino v. Raymark Indus. Inc.*, 151 F.3d 297, 317 (5th Cir. 1998).  "Because 'back pay is an equitable remedy,' the district court need not empanel an advisory jury but can decide the back pay issue itself absent the parties' agreement to the correct amount."  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379,
(continued...)

in actions not triable of right by a jury, the court upon its own initiative may try any issue with an advisory jury. FED. R. CIV. P. 39(c). The Court chose to do so here. The Court is not bound by the findings of the advisory jury and is free to adopt them in whole or in part or to totally disregard them. *See Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003) (citing *Sullivan v. Rowan Cos.*, 952 F.2d 141, 147 (5th Cir. 1992)).[7]

The Federal Rules of Civil Procedure provide for judgment as a matter of law where a party, having "been fully heard on an issue during a *jury* trial," has not established a "legally sufficient evidentiary basis" for its claim or defense, such that no "reasonable jury" could find for that party on that issue. FED. R. CIV. P. 50(a)(1) (emphasis added). However, judgment as a matter of law pursuant to Rule 50 applies *only* to jury trials, not actions tried to the court with an advisory jury. *See* FED. R. CIV. P. 50(a)(1); *Martin Midstream Partners v. Boone Towing Inc.*, 207 F. App'x 439, 440 (5th Cir. 2006) (unpublished); *see also Federal Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007) (holding that the strictures of Rule 50 do not apply in non-jury trials); *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (holding that by its terms,

---

[6]    (...continued)
394–95 (5th Cir. 2003) (internal citations omitted).

[7]    DPH did not consent to try the issue by a jury pursuant to Rule 39(c)(2), and therefore, the advisory jury verdict does not have the same effect as if a jury trial had been a matter of right.

Rule 50 applies only to jury trials); *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir.

2001) (same); *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 401 (3d Cir.

1999) (same).  Rule 52 governs issues tried to the court with an advisory jury.  *See*

*Martin Midstream*, 207 F. App'x at 440.

DPH's Renewed Motion is denied on the ground that Rule 50 is not the

appropriate mechanism for challenging the outcome on which no right to jury trial

attaches.  However, because motions for judgment as a matter of law made during

bench trials are treated as motions for judgment on partial findings under Rule 52(c),

*see Federal Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007) (citing *Northeast*

*Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 37 (1st Cir. 2001)), and because

the parties have fully joined issue on the points DPH raises, the Court treats DPH's

Renewed Motion as a motion for judgment on partial findings under Rule 52(c).[8]

Rule 52(c) provides that a court may enter judgment after a party has been

"fully heard" on an issue.  FED. R. CIV. P. 52(c).  A court entering judgment pursuant

to Rule 52(c) must satisfy the requirements of Rule 52(a) and find the fact specially

and state its conclusions of law separately.  *Id.*; FED. R. CIV. P. 52(a)(1).  Rule 52(a)

---

[8]     This is particularly appropriate in the circumstances of the case at bar, where DPH
filed its Renewed Motion under Rule 50 before the Court had determined whether
compensatory damages were available on Hickman's ADA retaliation claim.  If the
Court had decided to permit recovery of compensatory damages, Hickman would
have been entitled to a jury on the ADA retaliation claim and Rule 50 would have
been the appropriate mechanism for challenging the jury verdict.

does not require that the district court set out findings on all factual questions that arise in a case. *Valley v. Rapides Parish School Bd.,* 118 F.3d 1047, 1053–54 (5th Cir. 1997).  "Rule 52(a) exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Century Marine Inc. v. U.S.*, 153 F.3d 225, 231 (5th Cir. 1998) (internal quotations and citations omitted).  Rather, the district court is expected to provide a clear understanding of the analytical process by which ultimate findings were reached. *Valley*, 118 F.3d at 1053–54.

The Court is not required to draw any inferences in favor of the non-moving party, as would be required for a motion for judgment as a matter of law under Rule 50, but can make findings in accordance with its own view of the evidence.  *See Ritchie v. U.S.*, 451 F.3d 1019, 1023 (9th Cir. 2006) ("The Supreme Court has held with respect to Rule 52(c)'s predecessor that the district court need not give the non-moving party any favorable inferences.  *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990) ("[A]lthough a court might, after reviewing the evidence, decide in favor of the party moving for a dismissal under Rule 41(b) [Rule 52(c)'s predecessor], that court might not take the same case away from the jury because it might believe that the jury could *reasonably* find for the non-moving party.").").

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at trial, having considered the exhibits introduced by the parties, having reviewed all matters of record in this case, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law on the issues tried to the bench.[9]

### A.   Findings of Fact on Liability

The Court has considered carefully the trial record, the testimony and demeanor of all witnesses, and all exhibits admitted in evidence, the Court briefly summarizes the facts shown by the evidence at trial.  Additional facts found by the Court and, where applicable, by the jury are set out more fully in the analysis below.

Hickman was employed as a sales assistant with homebuilder DPH at the Crighton Ridge community from September 2003 until her employment was terminated on December 16, 2005.  Hickman testified she suffers from a variety of chemical sensitivities and that from 2003 to November 2005 she requested and received informal accommodations from the Crighton Ridge Sales Consultant, Bill

---

[9]   The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law.  To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

Oldham ("Oldham").  After Oldham left the company, his position was filled by Bob Svoboda ("Svoboda") on November 18, 2005.  Hickman became concerned that Svoboda was not continuing the informal accommodations Oldham had provided. Therefore, on December 1, 2005, Hickman sent an email to Jennifer Fusco ("Fusco"), DPH's Director of Human Resources, requesting formal accommodations under the ADA.  Fusco responded that pursuant to DPH's policy, Hickman needed to provide a medical certification substantiating her limitations and addressing the accommodations she was requesting so that DPH could initiate the process of determining whether and how to accommodate her needs.

On December 7, 2005, before she was able to get a doctor's appointment necessary to comply with the substantiation request, Fusco and DPH Sales Director, Kevin Weiderhold ("Weiderhold"), came to her office and, for the first time since she was hired more than two years earlier, provided her negative feedback on her job performance.  They informed her that her employment would be terminated if she did not sell three homes in the next thirty days.  There is no evidence this requirement was imposed on Svoboda, the sales consultant at Crighton Ridge, who, like Hickman, was responsible for selling homes, and who was solely responsible for doing the closing paperwork.

Several days later Hickman began experiencing abdominal pain and bleeding. On December 13, one of Hickman's days off, she saw her doctor, a general practitioner, Dr. David T. Le, who referred her to a specialist for a colonoscopy and further testing.  Hickman scheduled these tests for Thursday, December 15.  Hickman called Svoboda to let him know that she would not be at work that day and mentioned she was having medical procedures.  Hickman also called Ruth Dillon who agreed to cover Hickman's shift during her absence.  Hickman did not work on December 15 or December 16.  Hickman called Ruth Dillon again on December 16 and asked her to work Hickman's shift because she was groggy from the anesthesia.  Dillon did so. On December 17, 2005, Hickman checked her email from home and found an email dated December 16 from Fusco informing her that because she failed to comply with DPH's "Attendance and Punctuality" policy, she was considered to have voluntarily resigned her employment, *i.e.*, her employment was terminated.  After receiving this email, Hickman requested reinstatement of her employment.  DPH denied this request.

Additional findings are set forth hereafter as necessary.

**B.    ADA Retaliation Claim**[10]

**1.    Legal Standards**

Under the ADA, it is unlawful for an employer to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).  To prove her retaliation claim, Hickman may rely on direct or circumstantial evidence.  *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

Because DPH's Renewed Motion follows a trial on the merits, the Court does not inquire into the particular elements of the *McDonnell Douglas* framework. Rather, the Court focuses on the ultimate question of whether retaliation occurred.[11] *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) ("after a full trial on the merits, a district court must look at whether the plaintiff had presented sufficient evidence to allow a jury to arrive at a verdict, *i.e.*, whether the plaintiff has met his ultimate burden of proving discrimination or retaliation (depending on the

---

[10]    As discussed *supra*, Hickman was not entitled to a jury trial on her ADA retaliation claim.  Accordingly, her argument that DPH failed to preserve a number of issues raised in DPH's Renewed Motion is unavailing because the requirements of Rule 50 do not apply to the Court's analysis under Rule 52.

[11]    The Court may consider the proof plaintiff offers to support the *prima facie* case in determining whether a plaintiff has met her ultimate burden of proving retaliation.

statute at issue), rather than simply focusing on the plaintiff's *prima facie* case."); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 925 (5th Cir. 1999). In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). "The issue is whether or not 'but for' the protected activity, any adverse action would have been taken. The plaintiff may meet this ultimate burden of persuasion either directly or indirectly by showing that the employer's proffered explanation is unworthy of credence. In either case, the trier of fact must then determine which explanation, employer's or employee's, is the more persuasive." *Irby v. Sullivan*, 737 F.2d 1418, 1426 (5th Cir. 1984) (internal quotations and citations omitted).

Temporal proximity *alone* is insufficient to prove but for causation, but it is a relevant consideration in determining pretext. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Evidence that an employer did not follow its discipline policy can also be evidence of pretext. *See Bugos v. Rioch Corp.*, 2008 WL 3876548, at *5 (5th Cir. 2008) (unpublished) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 n.29 (5th Cir. 2005)).

### 2.    Findings of Fact and Conclusions of Law

As noted earlier, the Court has considered all the testimony and exhibits presented at trial, as well as the demeanor and credibility of the witnesses.  The Court concludes that Hickman has met her ultimate burden to prove that DPH's stated reason for terminating her employment was merely a pretext a retaliatory purpose. Hickman exercised a right protected by the ADA when, on December 1, 2005, she requested formal accommodations under the ADA.  DPH took an adverse employment action against her when her employment was terminated fifteen days later, on December 16.  DPH contends it terminated Hickman's employment because she violated DPH's "Attendance and Punctuality" policy.[12] This fifteen day span is strong circumstantial (albeit not dispositive) evidence that "but for" the request for accommodations, Hickman's employment would not have been terminated when it was.

Additionally, the events of the December 7 meeting between Hickman, Fusco and Weiderhold support Hickman's claim.  Fusco testified that she did not remember

---

[12]    DPH actually maintains that Hickman "voluntarily resigned" her position.  The Court does not credit DPH's argument that Hickman voluntarily resigned in the true sense of those words in that she willingly gave up her job at DPH.  Hickman's actions were only voluntary in the sense that she did not attend work on the days in question. There is no evidence she decided to abandon employment.  Testimony at trial established that Hickman wished to retain her employment and made efforts after her termination to have her employment reinstated.

Hickman having received any written warning or reprimand for any purpose before the December 7, 2005, meeting, no evidence of any warning or reprimand is in the record, and Hickman testified that she had received none.  At the December 7 meeting, Fusco and Weiderhold gave Hickman a "Record of Written Counseling" that informed her that DPH considered her to have "poor performance."[13]  While the Record of Written Counseling is not directly at issue because DPH does not contend that Hickman's employment was terminated for poor performance, the Court finds that the timing and conditions of this Record of Written Counseling are circumstantial evidence of DPH's retaliatory mind set and intent.  The meeting and Record of Written Counseling took place seven days after Hickman formally requested ADA accommodations, which is when DPH upper managment first learned she considered herself to have disabilities.  Moreover, the meeting and Record of Written Counseling indicates that shortly after Hickman made her request, DPH subjected her job performance to enhanced scrutiny due to her accommodation request.

At the meeting, Fusco and Weiderhold also informed her for the first time that she would be required to complete sales of homes.  Hickman voiced a complaint that this new mandate was retaliation for her accommodation request.  Fusco and Weiderhold nevertheless insisted that Hickman would have to sell three homes in

---

[13]     Record of Written Counseling, Plaintiff's Exh. 14.

thirty days.[14] This new requirement was a high home sales goal with an unreasonably short deadline.  Particularly in light of the fact that Hickman did not have the power to do the paperwork or close home sales, this sales requirement was a substantial shift in DPH's policy and procedure.  Oldham testified that it was never Hickman's personal responsibility to actually close on homes.  Weiderhold, on behalf of DPH, testified that the sales counselors (a position different from and in many respects senior to Hickman's) were primarily responsible for closing the sales in DPH's subdivisions.   Significantly, DPH produced no evidence that similar sales requirements were imposed on any other DPH employees—either sales assistants or sales counselors.  In sum, the Court finds the new employment criteria imposed at the December 7 meeting are circumstantial evidence of DPH's retaliatory intent.

DPH presented the testimony of Weiderhold and Fusco that the termination of Hickman's employment was entirely justified by her violation of the Attendance and Punctuality policy when she failed to inform Weiderhold she would be absent on December 15 and 16.  The Attendance and Punctuality policy requires that "an employee must notify his/her supervisor as far in advance as possible . . . if he/she expects to be late or absent."  DPH urges that Weiderhold was Hickman's direct

---

[14]     At the meeting Fusco and Weiderhold also informed Hickman that she would be moved to the Spring Trails community, but when Hickman attributed this transfer to retaliation, the transfer was rescinded.

supervisor and her failure to contact *him* on December 15 and 16 constituted a patent violation of the Attendance and Punctuality policy. However, the Court finds the evidence contradicting this position is more weighty. The Court is unpersuaded that Hickman was trained about the Attendance and Punctuality policy's application to her. It is clear that Oldham and Hickman for years had used the procedure Hickman employed on December 15, and used it both before and after any putative training. Hickman also demonstrated that it was very unclear who her supervisor was for purposes of the policy. Weiderhold did not direct Hickman's work on a day-to-day basis. Oldham, as the Crighton Ridge sales consultant, assigned Hickman her work duties. Moreover, an organizational chart submitted by DPH to the EEOC shows "Sales Assistants" reporting to "Sales Consultants," who, on December 15–16 , was Svoboda and not directly to the Director of Sales (Weiderhold).[15] There is no written policy that specified Weiderhold was Hickman's direct supervisor for any purpose, including for the purposes of the Attendance and Punctuality policy. It, therefore, was not a clear violation of the policy for Hickman to report her absence to Svoboda on December 15. The Court is simply unpersuaded that DPH believed Hickman had meaningfully or intentionally violated the Attendance and Punctuality policy.

---

[15]     Plaintiff's Exh. 28.

Even if Hickman's failure to call Weiderhold constituted a genuine violation of the Attendance and Punctuality policy, DPH's failure to abide by its usual progressive discipline policy constitutes circumstantial evidence in support of Hickman's retaliation claim. DPH's discipline policy provided that "[i]f an employee does not meet [DPH's standards of work performance], the Company may, under appropriate circumstances, take corrective action, other than immediate dismissal."[16] The policy further stated that "[d]epending on the severity of the action and the circumstances, DPH reserves the right to escalate the corrective action process to any step it deems necessary."[17]  Fusco testified that the progressive discipline policy was a graduated scale of disciplinary action that in the usual case involved receiving a verbal warning and two written warnings before being terminated.  DPH did not apply the graduated process to Hickman.  The December 15 and 16 infractions, which were part of a single episode, were Hickman's first violation of the Attendance and Punctuality policy.  Additionally, Hickman had arranged for an experienced former DPH sales assistant, Ruth Dillon, to cover her shifts so the Crighton Ridge Community was fully staffed during Hickman's absences. On the basis of a first-time, uncounselled, relatively technical infraction, DPH imposed on Hickman the most

---

[16]     DPH "Discipline Other than Immediate Termination" Policy, Plaintiff's Exh. 19.

[17]     *Id.*

severe remedy possible—termination.  This punishment was more severe than that inflicted on any other sales assistant or comparable level employee.  The only other evidence of application of the Attendance and Punctuality policy in a manner similar to how it was applied to Hickman was to an employee who simply stopped showing up for work, and gave no explanation.  This employee was not sick at the time and was not having medical tests in a hospital when DPH applied the policy.  That employee also did not arrange for coverage and did not request reinstatement, as Hickman did.  Despite management learning Hickman's whereabouts on December 16, and rather than attempting to contact Hickman for an explanation or to address the attendance infraction to prevent its recurrence once Hickman returned, DPH terminated Hickman's employment immediately.[18]  DPH's decision to fire Hickman for a first infraction even though she had been an otherwise successful two-year employee, the refusal to even consider reinstatement in light of all the circumstances, and the timing of this employment action establish the true reason for the termination was DPH's retaliation for Hickman's recent request for accommodations for her claimed disabilities.  The Court finds that DPH would not have terminated Hickman's employment without any prior verbal or written warning but for Hickman's

---

[18]      Hickman exercised poor judgment in various instances but, by DPH's own admission, none of these instances were the basis in any respect for the termination.

December 1 request for disability accommodations.  Accordingly, the Court concludes

that DPH retaliated against Hickman for exercising a right protected under the ADA.

### C.   ADA Retaliation Claim Damages

The Court now must determine the damages to which Hickman is entitled.  As

discussed previously, the only damages available under an ADA retaliation claim are

equitable damages, including back pay and front pay.

### 1.   Back Pay:  Findings of Fact and Conclusions of Law

*Hickman's Entitlement*.  Hickman seeks back pay from December 17, 2005,

through the date of judgment.  The Court breaks down this analysis into three periods,

December 17, 2005, through June 19, 2007, during which Hickman was largely

unemployed; June 20, 2007, through February 20, 2008, while Hickman worked for

Trendmaker Homes as a temporary employee, and; after February 20, 2008, when the

Trendmaker employment ended.

The purpose of ADA back pay compensation is to make the plaintiff whole by

restoring her to the same position she would have been in had the discrimination or

retaliation not occurred.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–21

(1975).  The Fifth Circuit explains that "[b]ack pay encompasses what the plaintiff

would have received in compensation but for the employer's violation of the [ADA]."

*Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 482–83 (5th Cir. 2007) (ADEA case)

(citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 n.8 (5th Cir. 1996)

(citing *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197 (1944))). A finding of an

ADA violation presumptively entitles the victim of the violation to a back pay award.

*Albemarle*, 422 U.S. at 421; *see also Patterson*, 90 F.3d at 937 ("the remedial

purposes of [Title VII] generally permit back pay relief in all but 'special

circumstances'" (citing *Albemarle*, 422 U.S. at 415)).

> In general, back pay liability in a wrongful termination case commences
> from the time the discriminatory conduct causes economic injury and
> ends upon the date of the judgment. In other words, back pay accrues
> from the date of the commencement of the discriminatory course of
> conduct causing financial loss until the date damages are "settled."

*Palasota*, 499 F.3d at 483 (internal citations omitted); *see also Quint v. A.E. Staley

Mfg. Co.*, 172 F.3d 1, 15 (1st Cir. 1999) ("A prevailing ADA claimant is

presumptively entitled to all back pay which would have accrued from the termination

date to the entry of judgment, provided it is made to appear that reasonable diligence

was exercised in the effort to secure other suitable employment." (internal quotations

and citations omitted)); *Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir. 1986)

(holding that back pay may be awarded to the date of judgment). Back pay may be

denied "only for reasons which, if applied generally, would not frustrate the central

statutory purposes of eradicating discrimination throughout the economy and making

persons whole for injuries suffered through past discrimination." *Albemarle*, 422 U.S.

at 421.  "'[H]owever, back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court.'"  *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990) ("*Sellers III*") (quoting *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988) ("*Sellers II*")).  "Exercise of this discretion is to be guided by the twin purposes of Title VII, which are 'to achieve equality of employment opportunity and to make persons whole *for injuries suffered on account of unlawful employment discrimination*.'"  *Id.* (quoting *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle*, 422 U.S. at 421)) (emphasis added).  "Thus, back pay is designed in part to alleviate the 'lingering ill effects' of employment discrimination."  *Id.* (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 235 (1982)).

The plaintiff has the burden to show what she would have earned but for the employer's violation.  *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872–74 (1st Cir. 1982).  The plaintiff must show this entitlement with reasonable certainty.  *Id.* at 873 ("The plaintiff has the burden of placing evidence in the record affording reasonable support for the sums found."); *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023, 1029 (5th Cir. 1992).  The Court must resolve uncertainties in determining back pay in favor of the retaliation victim.  *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260–61 (5th Cir. 1974).

Section § 2000e-5(g)(1) of Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." *See also Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 n.7 (5th Cir. 1992) ("Courts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards." (internal citations omitted)). Additionally, courts have the discretion to decide whether unemployment benefits should be deducted from a back pay award. *See Johnson v. Chappel Hill ISD*, 853 F.2d 375, 382 (5th Cir. 1988).

***December 17, 2005 through June 19, 2007: DPH's Liability after Hickman's Employment Lawfully Ends***. DPH initially argues that it can have no liability for lost wages after Hickman's employment lawfully ended. Specifically, DPH contends that the Crighton Ridge sales office closed December 31, 2005, and her job would have been ended at that date. DPH thus argues that Hickman's back pay damages be limited to the two-week period from December 16 to December 31, 2005.[19]

---

[19]     DPH cites the Court to two district court opinions addressing claims under the FMLA in support of this proposition. *See Harbuck v. Briggs Equip.*, 2006 WL 218096, at *7 n.6 (S.D. Tex. 2006); *Lapham v. Vanguard Cellular Sys., Inc.*, 102 F.Supp.2d 266, 268–70 (M.D. Pa. 2000). Both of these cases specifically interpret the FMLA damages statute (not the ADA) that limits an employee's damages to financial losses arising from the employment relationship. Neither case addresses the situation at bar where a person's employment is terminated and the employer asserts that the job

(continued...)

Hickman was an at-will employee with DPH from 2003 through December 15, 2005.   However, Hickman had never received any reprimands or negative performance reviews until after her request for disability accommodations.   Fusco testified that Crighton Ridge section 4 was renamed "Crighton Woods" section 1 after the County annexed the section 4 area.   Oldham and Svoboda, DPH's former employees who worked with Hickman, each testified that he sold homes in both the Crighton Ridge and Crighton Woods subdivisions.   In the DPH "Sales Office Phone Directory," Hickman is identified as working at the "Crighton Ridge/Crighton Woods" subdivision.[20]   Fusco further testified that DPH's practice when a community's model home closed was to evaluate DPH's staffing needs elsewhere and to discuss with the employees their interest in going to another community.   Fusco added that she expected this process to occur when Crighton Ridge closed.  The Court finds that Hickman demonstrated that but for the retaliation by DPH, she would more likely than not have been assigned to the Crighton Woods model home after the Crighton Ridge development closed.  DPH presented no evidence to contradict this

---

(...continued)
would have lawfully terminated shortly thereafter, regardless of whether the employee had been terminated at the time she actually was.  The Court is not persuaded that DPH's non-binding authorities establish that as a matter of law Hickman's back pay damages period must be limited to December 16 to December 31, 2005.

[20]     *See* Plaintiff's Exh. 18, at 6.

conclusion.  DPH did not prove the new community's staff had special skills, that the staff was transferred from other overstaffed communities, or that Hickman would not have been selected.  Thus, DPH has not refuted Hickman's evidence that she was likely to have been placed at the new subdivision as a sales assistant.  Indeed, there is no probative evidence establishing that Hickman's employment would have been terminated on December 31, 2005.[21]

*December 17, 2005 through June 19, 2007:  Failure to Mitigate*.  DPH also argues that Hickman is not entitled to back pay because she failed to mitigate her damages.  A plaintiff suing for back pay under the ADA has a duty to mitigate her damages by using reasonable diligence to obtain substantially equivalent employment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998) (citing *Sellers III*, 902 F.2d at 1193).  The employer has the burden of proving failure to mitigate, and may do so by demonstrating that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain it. *Sellers III*, 902 F.2d at 1193.  The employer must show not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and

---

[21]    The mere fact that Hickman may have had no guarantee of a job after December 31, 2005, does not prevent recovery of back pay after that date.

for which she was qualified.  *See Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972).[22]

The Court concludes that DPH did not meet its burden to establish that Hickman failed to make a reasonable effort to obtain work in 2006 and the first portion of 2007.  Hickman testified credibly that, following the termination of her employment, she contacted the Texas Workforce Commission and applied for work under their program, contacted several employment websites (such as monster.com), registered with Greater Houston Homebuilders' job line, distributed brochures with her resume, interviewed with builders, and registered with multiple temporary staffing

---

[22]    DPH cites to *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003), for the proposition that if an employer proves an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment.  This, however, conflicts with the earlier Fifth Circuit decision in *Sparks*, 460 F.2d at 443.  One appellate panel may not overrule a decision, right or wrong, of a prior panel, absent *en banc* reconsideration or a superseding contrary decision of the Supreme Court.  When faced with conflicting panel opinions, the earlier opinion controls.  *See, e.g., United States v. Dial,* 542 F.3d 1059, 1060 (5th Cir. 2008) ("our rule of orderliness directs that 'one panel of this court cannot overrule the decision of another panel.'") (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006); *Barrientes v. Johnson*, 221 F.3d 741, 780 n.30 (5th Cir. 2000).

The earliest Fifth Circuit precedent dictates that DPH, in order to meet its burden of proof on its affirmative defense that Hickman failed to mitigate her damages, must establish that Hickman failed to exercise reasonable diligence ***and*** that there were substantially equivalent jobs available that she could have discovered and for which she was qualified.

services.  Furthermore, Hickman presented dozens of documents and brochures that related to her job search.

DPH argues that Hickman's failure to apply to Spherion before June 2007 demonstrates she did not exercise reasonable efforts to find comparable employment. The Court is unpersuaded.  The fact that Hickman did not apply specifically to Spherion, one of several available temporary employment agencies in the Houston area during much of this period, does not establish that she failed to exercise other reasonable efforts to obtain employment.  DPH has not met its burden to demonstrate a failure to mitigate and the Court holds that Hickman's back pay award should not be reduced on this basis.

**_June 20, 2007 to February 20, 2008: Higher Paying Job_**.  DPH also argues that Hickman's entitlement to back pay is cut off by her employment in a higher paying job through Spherion, an employment agency that places temporary workers, because her damages were settled as of this date.  DPH cites the Court to _Palasota_, 499 F.3d at 486, and _Kolb_, 694 F.2d at 874 n.4, to support its argument that back pay accrues only until the date damages are "settled" and that damages are settled when a plaintiff begins earning more at her new job than she did from the job from which she was discharged.

Plaintiff was placed through Spherion as a sales assistant at Trendmaker Homes on June 20, 2007, and earned pay at a rate that exceeded her compensation at DPH. In response, Hickman argues that the job at Spherion was only temporary and that taking a temporary higher paying job does not bar back pay subsequent to taking such a temporary position.

A close reading of DPH's cited authorities and the Court's independent search establish that relevant Fifth Circuit precedent does not distinguish between "temporary" and "permanent" higher paying jobs *per se* for purposes of determining the relevant back pay period. The appropriate inquiry is whether an employee has acquired "substantially equivalent employment." "Substantially equivalent employment" is employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the past position from which the claimant has been discriminatorily terminated. *Palasota*, 499 F.3d at 486 (citing *Sellers III*, 902 F.2d at 1193). Once an employee acquires new substantially equivalent employment, back pay is no longer appropriate because the employee has been returned to the same position she would have been in had the retaliation not occurred.

The Court concludes that Hickman's entitlement to back pay is not cut off by her employment in a higher-paying job at Trendmaker Homes obtained through

Spherion.  Hickman's temporary position at Trendmaker was not substantially equivalent employment to her job as a full time sales assistant with DPH.  Hickman's hourly pay rate was higher with Trendmaker.  It also appears that Hickman's job responsibilities at Trendmaker were roughly equivalent to those with DPH.  However, Hickman did not receive health benefits or bonuses for sales at Trendmaker, as she had with DPH.  DPH did not demonstrate that a temporary employee, such as Hickman, had the same promotional opportunities as a full time permanent employee at DPH.  At DPH, Hickman's promotional opportunity was to become a sales consultant responsible for the sales of homes; in contrast, at Trendmaker, the next promotion would have been to receive a full time sales assistant or hostess position directly with Trendmaker, with employee benefits.  The Court concludes DPH failed to prove that Hickman's employment with Trendmaker was substantially equivalent to her employment at DPH.  Accordingly, Hickman's employment through Spherion with Trendmaker does not cut off her entitlement to back pay.

Hickman's interim earnings at Trendmaker will, however, be offset against her back pay award.

*__Post-February 20, 2008: Trendmaker/Spherion Period__*.  Hickman claims back pay damages from the date after termination from her Trendmaker/Spherion position, February 21, 2008, until the date of final judgment in this case.  The Court is

unpersuaded.  Hickman did not present any evidence to show it was more likely true than not that she would have been employed by DPH as a sales assistant on or after February 21, 2008.  While Hickman demonstrated she likely would have been placed at Crighton Woods after the Crighton Ridge sales office closed in late December 2005, she offered no evidence regarding what DPH communities and sales offices were open 2008 or what DPH's staffing needs were for this period.  Further, the Court cannot ignore the financial realities of mid-2008 and thereafter.  The Court takes judicial notice of the global, national, and local financial and credit crises, as well as the precipitous and continued drop in oil and gas prices starting in mid-2008, which clearly severely exacerbated the decline in home sales in the Houston area.  It is inescapable that the Houston area real estate market suffered along with the rest of the nation since that time.  The Court is not persuaded that Hickman would have continued to be employed by DPH from February 21, 2008, until the date of judgment.[23]

Also, although not a grounds to fire her or refuse to transfer her to the Crighton Woods community in light of all her knowledge of the community in 2005, Hickman's last six months' sales efforts had not been productive at Crighton Ridge.

---

[23]    There are also indications that DPH's financial condition significantly deteriorated along with the declining economy as 2008 progressed, as counsel repeatedly pointed out.

Hickman has not shown reasonable support that she still would have had a job at DPH and be entitled to back pay for the period February 21, 2008, to the present. *See Kolb*, 694 F.2d at 872–74.

Hickman also argues that she should recover back pay for the 2008 period because DPH made a improper discovery request to Trendmaker that notified Trendmaker of her litigation against DPH and, as a result, Trendmaker ended her temporary position two months later. There is no dispute that DPH's attorneys sent a discovery request to Trendmaker in December 2007. DPH did so because Hickman had, prior to her job at DPH, worked as a full-time employee with the company. Hickman argues that DPH's actions constitute continuing retaliation. Hickman's only evidence supporting her theory is that the founders of DPH and Trendmaker Homes had a joint venture and were acquainted. The admissible evidence fails to establish by a preponderance of the evidence that the discovery request was a proximate cause Hickman's loss of her Trendmaker/Spherion job in February 2008, much less establish proximate cause between Hickman's request for accommodations in December 2005 and Trendmaker's decision to let Hickman go in February 2008.

Ultimately, back pay is an equitable remedy. The Court has no basis to conclude Hickman, an at will sales assistant, would have been employed by DPH at anytime in 2008. The Court therefore exercises its discretion to deny back pay to

Hickman after her position at Trendmaker ended in February 2008. In sum, to grant Hickman back pay relief for this period would be a windfall and does not further the goal of making "persons whole for injuries suffered through past discrimination." *Albemarle*, 422 U.S. at 421.

### *Calculation of Back Pay Damages for ADA Violation.* The Court must

calculate Hickman's back pay for the period December 17, 2005, the day after her termination, through February 20, 2008, the date Hickman's assignment with Trendmaker ended. Hickman's annual base pay with DPH was $28,000, which breaks down to approximately $538.50 per week.[24] Hickman's Employment Agreement also provided that she would receive a bonus of $200 for every home sale she helped DPH make. It is clear from the record that home sales in Crighton Ridge were very poor in 2005; only two homes were sold between June and November. Hickman presented no evidence of what bonus she would have received for the last two weeks of 2005, or for 2006 or 2007. The Court therefore declines to consider bonus payments in calculating Hickman's back pay award.

Hickman lost earnings as follows for the period December 16, 2005, until February 20, 2008:

---

[24]     Hickman Employment Agreement, Defendant Exhibit # 3.

| **2005**: | $538.50 x 2 weeks | = | $1,077.00 |
|---|---|---|---|
| **2006:** | $538.50 x 52 weeks | = | $28,002.00 |
| **2007:** | $538.50 x 52 weeks | = | $28,002.00 |
| **1/1/08–2/20/08:** | $ 538.50 x 8 weeks | = | $4,308.00 |
| **TOTAL:** | | | **$61,389.00** |

DPH is entitled to an offset for Hickman's interim earnings:[25]

| **2006:** | $1,480.00 |
|---|---|
| **2007:** | $22,230.70 |
| **1/1/08–2/20/08:** | $5,100.00 |
| **TOTAL:** | **$28,810.70** |

To prevent Hickman from recovering a windfall or more than an amount that would make her whole, the Court finds that unemployment benefits Hickman received should be subtracted from the back pay award. DPH is therefore entitled to a further reduction of **$8,823.00** for pre-Trendmaker/Spherion unemployment benefits received by Hickman.

The Court accordingly concludes that Hickman is entitled to a back pay award totaling **$23,755.30** as total compensation for DPH's ADA retaliation violation.

---

[25]   Hickman testified that in 2006 she reported to the IRS that she earned $1,480 excluding unemployment benefits. In 2007, Hickman was employed by Resource Staffing Inc., Judith Orrson, and Spherion. *See* Plaintiff's Exhs. 16C, 16D, 16E. In 2008, Hickman was employed by Spherion. *See* Plaintiff's Exh. 17.

### 2.      Front Pay

Front pay is an equitable issue left to the discretion of the Court.  *See Sellers III*,

902 F.2d at 1196.  The Court may determine front pay with the assistance of an

advisory jury.  *E.E.O.C. v. E.I Du Pont de Nemours & Co.*, 480 F.3d 724, 732 (5th

Cir. 2007) (citing *Rutherford v. Harris County*, 197 F.3d 173, 188 (5th Cir. 1999)).

The purpose of front pay is to compensate the plaintiff for lost future wages and

benefits.  *Id.*  Reinstatement is generally preferable to an award of front pay, but front

pay can be awarded if reinstatement is not feasible.  *Id.*  In the case at bar, the parties

agree that reinstatement is not feasible.  The Court concurs.

The Court has found that Hickman's back pay award should be cut off in

February 2008.  As there is sufficient evidence that back pay should end prior to trial,

an award of front pay is logically inappropriate.  *Cf. McKennon v. Nashville Banner

Pub. Co.*, 513 U.S. 352, 361–62 (1995) (holding in an ADEA case that when after

acquired evidence of employee wrongdoing cut off accrual of back pay, reinstatement

or the award of front pay was inappropriate).  The jury found that Hickman was not

entitled to front pay damages on her ADA retaliation claim.  The Court agrees.  Front

pay is denied.

### 3.      Prejudgment Interest

Prejudgment interest is available on back pay awards, but this award rests with the discretion of the Court. *Sellers II*, 839 F.2d at 1140.  Hickman failed to offer any evidence regarding prejudgment interest.  The Court accordingly declines to make such an award.

### D.      TCHRA RETALIATION CLAIM

The parties do not contest that the TCHRA, unlike the ADA, permits the recovery of compensatory damages on a retaliation claim.[26]  *See* TEX. LAB. CODE § 21.2585.  Hickman was entitled to have a jury determine the amount of her

---

[26]      At docket call DPH argued that Hickman had failed to articulate a claim under the TCHRA retaliation statute, TEX. LAB. CODE. § 21.055.  Section 21.055 provides *inter alia* that an employer commits an unlawful employment practice if it "retaliates . . . against a person who, under [the TCHRA]: (1) opposes a discriminatory practice." *Id.*  DPH argued that Hickman did not oppose a discriminatory practice by requesting disability accommodations for herself.  In response, Hickman articulated the following theory for her TCHRA retaliation claim:  She opposed a discriminatory practice at the December 7, 2005, meeting with Fusco and Weiderhold when she told them that their threat to terminate her employment if she did not sell three homes in 30 days was discrimination against her for requesting disability accommodations a week earlier.  The Court concluded that this theory was sufficient to present to the jury, but warned the parties that it would carefully consider whether the evidence presented at trial was legally sufficient.  The Court now concludes that the trial evidence, when viewed in the light most favorable to the verdict, was adequate to support this theory.  Hickman testified that, at the December 7 meeting, she stood up from her desk and told them that this new requirement was retaliation for her asking for accommodations under the Americans with Disability Act.  She also testified that at the December 7 meeting, she accused them of discriminating against her because she asked for them to continue the prior accommodations under the law.  Accordingly, the TCHRA retaliation claim was properly submitted to the jury.

compensatory damages.  The jury was properly instructed on Texas law and was presented with evidence of Hickman's emotional pain, suffering, and loss of enjoyment of life.  The jury determined that DPH violated the TCHRA by terminating Hickman's employment because she opposed a discriminatory practice under the TCHRA.  The jury elected, however, not to award any compensatory (or other) damages.

DPH's Renewed Motion does not challenge the jury's verdict on the TCHRA claim; but, because back and front pay are equitable remedies, the Court must independently determine what amount, if any, is an appropriate award of back and/or front pay for that state law retaliation claim.  *See Caballero v. Central Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993) ("jury trials are appropriate for finding the ultimate issues of fact under TCHRA, but not for fashioning appropriate equitable relief").  "Once the right to a jury trial attaches to a claim . . . it extends to all factual issues necessary to resolving that claim." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998).  Therefore, the only issue before the Court is whether to award equitable damages in the form of back pay and/or front pay.  In an advisory capacity the jury determined that Hickman should not recover back pay or front pay damages on that claim.

The purpose of equitable damages under the TCHRA is the same as under the ADA—to make the plaintiff whole by restoring her to the same position she would have been in had the retaliation not occurred. *See Albemarle*, 422 U.S. at 418–21.[27] As discussed previously, the Court finds that Hickman is entitled to $23,755.30 in back pay but no front pay on her ADA retaliation claim. While the factual predicates for the ADA and TCHRA retaliation claims differ to some extent, the ultimate effect on Hickman's employment under either theory was that her employment was terminated on December 16, 2005. Therefore, under either theory (ADA or TCHRA), to be made whole, Hickman is entitled to recover back pay through February 20, 2008, less her interim earnings, unemployment benefits,[28] and subject to cutoff by an intervening, higher-paying job and failure to mitigate.

The Court has found that Hickman is entitled to back pay on her ADA retaliation claim. The TCHRA violation is based on virtually the same conduct, albeit a slightly different legal theory. Hickman is accordingly entitled to the same back pay

---

[27]   The Texas Supreme Court has repeatedly held that a court must look to federal law to interpret the TCHRA. See*, e.g., AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

[28]   "Interim earnings, workers' compensation benefits, and unemployment compensation benefits received operate to reduce the back pay otherwise allowable." TEX. LAB. CODE § 21.258(c).

for the TCHRA retaliation violation as the ADA violation, but she may collect only once to avoid any double recovery.

Front pay under the TCHRA is an equitable issue for the Court.  *See Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 45 (Tex. App.—Austin 1998, pet. denied).  For the same reasons that the Court found no entitlement to front pay on the ADA retaliation claim, the Court declines to award Hickman front pay on her TCHRA retaliation claim.

## V.   CONCLUSION

For all the foregoing reasons, the Court concludes DPH's Renewed Motion should be **DENIED**.  Additionally, the Court finds that Hickman has proved by a preponderance of the evidence that DPH retaliated against her for requesting disability accommodations under the ADA.  The Court accordingly grants Hickman a back pay award of $23,755.30 on the ADA retaliation claim.  The Court declines to award front pay damages or compensatory damages on the ADA retaliation claim.  The Court also declines to award back pay or front pay damages on Hickman's TCHRA retaliation claim.

**SIGNED** at Houston, Texas, this 24<u>th</u> day of **March, 2009**.

Nancy F. Atlas
United States District Judge