IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PAMELA MILES-HICKMAN,      §
    Plaintiff,      §
                       §
v.                         §      CIVIL ACTION NO. H-07-0754
                       §
DAVID POWERS HOMES, INC.,  §
    Defendant.     §

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Pamela Miles-Hickman's ("Hickman")

Motion for Attorney Fees and Costs [Doc. # 154].[1]  Also pending before the Court is

Defendant David Powers Homes' ("DPH") Motion for Attorney Fees and Costs of

Prevailing Party [Doc. # 153].[2]  DPH does not dispute that Plaintiffs are entitled to

recovery of some fees and costs; DPH only disputes the amount Hickman seeks.

Hickman, however, disputes whether DPH is entitled to recover any of its own fees

or costs.  Upon review of the parties' submissions, all pertinent matters of record, and

applicable law, the Court concludes that Plaintiffs' Motion should be **granted in part**

---

[1]    DPH has filed a Response to Plaintiff's Application for Attorney Fees and Costs and Objection to and Motion to Strike Declarations and Affidavit [Doc. # 157].  Hickman has additionally filed a Supplemental Memorandum of Law [Doc. # 156] in connection with her Motion for Attorney Fees and Costs.

[2]    Hickman has Responded [Doc. # 159].  DPH has additionally filed an Appendix to its Motion [Doc. # 155].

and **denied in part**, and that DPH's Motion should be **denied**.  The Court awards

Hickman attorneys' fees and costs totaling **$60,602.57**.

## I.      FACTUAL BACKGROUND

Hickman filed this lawsuit in March 2007, alleging violations of the Americans

with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., the Texas

Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq.*, the

Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the

Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. § 1001 *et*

*seq*., and the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29

U.S.C. § 1161 *et seq.*  Hickman asserted at least eleven theories.  At the hearing held

March 27, 2009, Hickman argued that she had three "groups of claims": disability

discrimination claims (including retaliation); FMLA claims; and ERISA/COBRA

claims.  The Court is not persuaded by Hickman's attempt to combine her claims in

this manner.  Each of her eleven claims had different legal elements requiring separate

analysis.  However, the Court has grouped certain claims into pairs because they are

sufficiently similar to one another that the legal and factual analysis on the pairs of

claims cannot be meaningfully separated.  For the purposes of attorneys' fee analysis,

the claims under consideration will be grouped as follows:

(1)      ADA and TCHRA disability discrimination;

(2)     ADA and TCHRA failure to accommodate;
(3)     ADA and TCHRA retaliation;
(4)     FMLA retaliation and interference; and
(5)     ERISA retaliation and interference.[3]

On October 21, 2008, the Court issued a Memorandum and Order [Doc. # 82][4] granting in part DPH's Motion for Summary Judgment [Doc. # 46], Hickman's Motion for Partial Summary Judgment [Doc. # 43], and DPH's Motion for Partial Summary Judgment on Alleged Damages [Doc. # 48].  As a result, several of Hickman's original claims were dismissed.  Four claims proceeded to trial: (1) retaliation under the ADA; (2) retaliation under the TCHRA; (3) retaliation under the FMLA; and (4) interference under the FMLA.

On December 19, 2008, after five days of trial and one day of deliberation, the jury returned a verdict in Hickman's favor.  The jury found that DPH violated the ADA by terminating Hickman's employment because she requested accommodations for claimed disabilities.  The jury awarded damages for the ADA violation.  The jury also found that DPH violated the TCHRA by terminating Hickman's employment

---

[3]     The Court does not include in these calculations the COBRA claim Hickman asserted. The Court denied Plaintiff's request for attorneys' fees associated with that claim. *See* Amended Memorandum and Order [Doc. # 105], at 69–72. Hickman does not seek in the pending fee application any compensation for her counsel's time spent on that claim.

[4]     The Court subsequently issued an Amended Memorandum and Order [Doc. # 105] on December 9, 2008, correcting several clerical errors in the October 21, 2008, Memorandum and Order.

because she opposed a discriminatory practice under the TCHRA, but awarded no damages for this violation.  The jury found that DPH did not retaliate against Hickman for engaging in FMLA-protected activity and did not interfere with, restrain, or deny Hickman's right to FMLA leave or her attempt to exercise her right to FMLA leave.[5]

After trial, DPH filed a Renewed Motion for Judgment as a Matter of Law [Doc. # 143] which the Court denied by Memorandum and Order [Doc. # 152] on March 24, 2009.  With respect to issues tried to the bench, the Court concluded that DPH retaliated against Hickman for requesting disability accommodations under the ADA and exercised its equitable discretion to grant Hickman a back pay award of $23,755.30.  The Court declined to award compensatory damages as a matter of law and denied front pay damages on Hickman's ADA retaliation claim based on the facts proven at trial.  The Court also denied back pay and front pay damages on the TCHRA retaliation claim.

The parties both seek to recover their own attorneys' fees and costs.  Hickman requests the Court award $134,225.00 in attorneys' fees and $1,340.36 in costs.  DPH objects on various grounds to the amount sought and argues that the fees and costs recoverable should not exceed $16,954.26.  DPH, on its own behalf, seeks an award of $64,651.24 in attorneys' fees and costs for its defense of this suit.  Hickman

---

[5]     *See* Verdict of the Jury [Doc. # 144].

opposes this relief in its entirety.  On March 27, 2009, the Court conducted a hearing and afforded the parties an opportunity to present evidence on the reasonableness of their own fees and costs and to argue their points in opposition to entitlement and/or the reasonableness of the other party's claim.[6]

## II.    ANALYSIS

### A.    Hickman's Attorneys' Fees

#### 1.    Legal Standards

The parties do not dispute that Hickman is entitled to recover attorneys' fees and costs; at issue is the amount to be awarded.  Attorneys' fee requests in the Fifth Circuit are governed by the "lodestar" analysis.  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorneys and the attorneys' reasonable hourly billing rate.  *Id.* (citing *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).

In determining whether the amount of time expended on a matter is reasonable,

---

[6]    The Court also permitted the parties to cross-examine the opponent's counsel on the award requested.

courts are to review time records supplied by the movant and exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). In deciding whether a fee is excessive, the court must consider whether "the requested fees . . . bear a reasonable relationship to the amount in controversy . . . ." *Northwinds Abatement v. Employers Ins.*, 258 F.3d 345, 354 (5th Cir. 2001) (citing *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987)); *see Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."); *see also Migis v. Pearle Vision*, 135 F.3d 1041, 1047–48 (5th Cir. 1998). However, disproportion between the amount of attorneys' fees sought and the damages recovered in the lawsuit does not alone "render the award of attorneys' fees excessive." *Northwinds*, 258 F.3d at 355.

Plaintiffs seeking attorneys' fees have the burden of showing the reasonableness of hours billed, which includes proving that they exercised billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment

requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* In setting a reasonable billing rate, courts are directed to consider the attorneys' regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). Where "the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so." *Islamic Center of Miss. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

Once the lodestar is determined, the court may adjust the figure upward or downward as necessary to make the award of attorneys' fees reasonable, *see Green*, 284 F.3d at 661, while ensuring that the fee award does not provide a windfall to the plaintiff, *see Kellstrom*, 50 F.3d at 328. However, while the court has "broad discretion in setting the appropriate award of attorneys' fees," *Watkins*, 7 F.3d at 457 (citing *Hensley*, 461 U.S. at 436–37), the lodestar is "presumptively reasonable and should be modified only in exceptional cases." *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *see also Saizan*, 448 F.3d at 800.

In deciding whether to make an adjustment to the lodestar figure, the court is

to consider the "*Johnson*" factors, which include:

1. The time and labor required to represent the client(s);
2. The novelty and difficulty of the issues in the case;
3. The skill requisite to properly perform the legal services;
4. Preclusion of other employment by the attorney due to acceptance of the case;
5. The customary fee charged for those services in the relevant community;
6. Whether the fee is fixed or contingent;
7. The time limitations imposed by the client or circumstances;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of attorney(s);
10. The undesirability of the case;
11. The nature and length of the professional relationship with the client;
12. Awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see also*

*Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372, 376 (5th Cir. 2008).

While the court is to "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel," *Migis*, 135 F.3d at 1047, the most critical factor in this analysis is the "degree of success obtained." *Saizan*, 448 F.3d at 799 (citing *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). However, this factor alone does not require that the Court adjust a fee award. *Saizan,* 448 F.3d at 799 ("While a low damages award is one factor which the Court may consider in setting the amount of fees, this factor

alone should not lead the court to reduce a fee award."); *see also Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000).  Moreover, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800 (citing *Migis*, 135 F.3d at 1047).

### 2.    Lodestar Calculation

In calculating the lodestar figure, Hickman bears the burden of demonstrating that the hours expended *and* the rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427.  In this case, Hickman seeks to recover fees paid to her two attorneys, Steven Petrou, Esq. and Stanley Santire, Esq.  Hickman has submitted an after-the-fact billing summary prepared by Petrou months or years after the work was performed. Petrou reports that he spent 516.35 hours on this case and seeks compensation at an hourly rate of $250.  Santire (who keeps contemporaneous time records) reports working 93.00 hours and bills at the rate of $250 per hour.  Because the Court denied attorneys' fees to Hickman on her COBRA claim, counsel subsequently reduced the amount of hours for which she seeks compensation by 72.45 hours—40.20 hours from Petrou's time and 32.25 hours from Santire's time.  Accordingly, Hickman now requests compensation for 476.15 hours for Petrou's work and 60.75 hours for Santire's services.  Hickman's ultimate lodestar calculation totals $134,225.00.  DPH

argues that this figure is too high, both because the number of hours reported includes time that is unnecessary given Hickman's limited ultimate success and because Santire's hourly rate is too high.  DPH argues that Hickman instead should only recover attorneys' fees totaling $16,322.49.

### a.    Hours Expended

Regarding whether the hours expended by Hickman's counsel were reasonable, DPH primarily argues that Hickman was ultimately successful on only one of the eleven original claims.[7]  DPH argues that the time records of Hickman's counsel are not described or limited by issues and, therefore, the Court should reduce all hours claimed to account for Hickman's limited success.  DPH also urges that Hickman should recover only one-eighth of counsel's hours billed, which equals 59.5 of the hours claimed for Petrou and 7.59 of Santire's requested hours.  The Court disagrees with DPH's analysis in various respects but concurs that an award of attorneys' fees and costs to Hickman should not include all the hours or expenses requested.

First and most significantly, Petrou testified his time entries were after-the-fact estimates based on his review of his files in preparation for his attorneys' fee request. As he explained at the fee hearing, he attempted to reconstruct the amount of time he

---

[7]    DPH more specifically contends that Hickman brought essentially eight claims and that she was successful on only one of them.  DPH urges also that she obtained damages only on her ADA retaliation claim.

spent on many hundreds of tasks involved in this suit.  Despite Petrou's obvious good faith, the Court is unpersuaded and will not condone his practice of writing time entries long after the events reported.  Counsel who plan to seek attorneys' fee awards in litigation must keep some type of reliable records, which generally requires that the records be made contemporaneously with—or at least close in time—to when the work is performed.  Having reviewed carefully Petrou's summary of work performed, the Court finds that he has not demonstrated that his estimates are sufficiently reliable and the time requested was all necessary.  His time clearly was not adequately documented in such a way to warrant compensation every hour sought.   The Court therefore adjusts downward by 10% the total time reported in Petrou's summary.  The Court does not make this downward adjustment for the total time reported in Santire's summary because he kept contemporaneous time records.

Second, it is clear that Hickman achieved only limited success in this case.  She recovered damages on only her ADA retaliation claim.[8]   Therefore, to find a

---

[8]      It is noted that Hickman obtained a favorable liability verdict  from the jury on her TCHRA retaliation claim, although she was awarded no damages on that claim.  The Court nevertheless deems the TCHRA claim a successful one.  It was highly duplicative factually of the ADA retaliation claim.  TCHRA-based front and back pay damages would have been duplicative of those on the ADA retaliation claim.  Further, the absence of a jury award for compensatory damages for the TCHRA claim may well have been attributable to the fact that the jury awarded compensatory damages to Hickman on the ADA retaliation claim and likely assumed that the same category of damages for the TCHRA claim would have been redundant.  The jury was unaware of the legal issues surrounding the right to compensatory damages under the ADA
(continued...)

reasonable fee in this case the Court will consider the relationship of the hours expended on the successful claims and those worked on the other claims asserted.

After close and independent analysis of Petrou and Santire's summaries, the Court has concluded that the work can be divided into four categories:

(1)     factual development, which includes client meetings and fact gathering from Defendant, its employees and third parties through discovery and other means;

(2)     legal research and writing, which includes research and drafting of legal memoranda, motions, and letters containing legal points directed to DPH or to the Court, as well as preparation and review of correspondence;

(3)     time spent in court and preparation for court appearances, including pre-trial conferences and hearings, trial and post-hearing proceedings; and

(4)     clerical or administrative tasks.

The amount of time the Court finds reasonable varies with the type of work performed. Turning to the first category, factual development, the vast majority of Hickman's claims shared the same general factual bases. Under her theories, virtually all the claims required development of the entire chronology of events and she sought

---

[8]      (...continued)
retaliation claim. *See* Memorandum and Order [Doc. # 152], at 4–8. Hickman could have but did not seek to eliminate a jury question on compensatory damages for her ADA retaliation claim.

the same damages for most of these claims. On the other hand, the Court finds it appropriate to grant Hickman 90% of the requested hours spent on factual development—after the 10% reduction of Petrou's fees described above for lack of contemporaneous records. This additional 10% reduction is warranted because some of the discovery requested by Hickman and her resistance to DPH's discovery requests were unfounded and thus time spent on them was not reasonable.[9]

Hickman was ultimately successful on only one of the five categories of claims under consideration in this fee application. By and large, Petrou's time records on legal research and writing do not identify what claims he worked on in each session of time requested. The Court is unpersuaded that he spent the majority of his time on the successful claims. In the absence of any better available allocation mechanism, the Court grants one-fifth of the requested hours spent by Petrou on legal research and writing. Some of Santire's time records are more detailed, allowing the Court to generally identify what time was spent on Hickman's successful category of claims. For this time, in accordance with Hickman's success on the issues in question, the Court grants one-half of the requested hours.

As to the third category of time expended by Petrou and Santire, *i.e.*, in-court and court preparation time, the Court grants Hickman two-thirds of the requested

---

[9]     It is noted that Hickman will receive attorneys' fees for the time spent on objecting to unreasonable discovery positions taken by DPH.

hours.  The Court personally handled all hearings and the trial.  The Court's best estimate is that two-thirds of those sessions were spent on matters that applied to all the claims asserted, including the ones on which Hickman was successful.

Finally, the Court concludes that Hickman should recover 100% of the requested hours spent on clerical and administrative tasks.[10]

### b.      Attorneys' Hourly Rates

DPH disputes the $250 per hour rate charged by Santire.  DPH argues that Santire should not be compensated at the same rate as lead counsel Petrou and that his rate should be at an associate level.

In support of her position, Hickman offers the affidavit of a local attorney, Ronald H. Tonkin, who practices in the area of employment law and who states that the $250 hourly fee charged by Santire is not only reasonable but is "on the low side."[11]  DPH moves to strike this affidavit because Tonkin was not identified by Hickman as an expert in this case under Federal Rule of Civil Procedure 26 and/or in a timely designation of experts filed by Hickman.  The Court agrees.  Because Tonkin was not disclosed as an expert in accordance with the Court's pretrial schedule (to

---

[10]    At least 10 hours billed for tasks that amount to clerical and administrative work should have been performed by a legal assistant.  As discussed in the next section, these hours will not be compensated at the rate of $250 per hour.

[11]    *See* Letter from James T. McMillen [Doc. # 53].

which the parties agreed), the Court strikes his affidavit regarding the reasonableness of the attorneys' fee rates of Petrou and Santire and does not rely on it.

Based upon its personal knowledge, experience, and expertise, however, the Court finds that $250 per hour for Santire's time is a reasonable rate for his legal services. Santire's legal contributions to this litigation were constructive and necessary. The 60.75 hours he spent (other than on the COBRA research and writing) were amply justified at his full hourly billing rate of $250 per hour. Accordingly, DPH's objection to Santire's rate of $250 per hour is overruled.

DPH has not contested that Petrou's rate of $250 per hour is reasonable. When a rate is not contested, it is *prima facie* reasonable. *Islamic Ctr.*, 876 F.2d at 469. The Court concludes that Petrou's rate of $250 per hour is a reasonable rate for his legal services. However, with respect to time billed by Petrou for clerical or administrative work such as familiarizing himself with court procedures, filing documents, drafting ministerial correspondence, or filing materials in counsel's own files, the $250 per hour rate is excessive. This work should have been performed by a legal assistant, not by an experienced attorney. The Court finds that a rate of $100 per hour is a reasonable rate for a legal assistant who performs competently clerical and administrative work.

### c.     Lodestar Calculation

Accordingly, the lodestar calculation is as follows:

Petrou:
     Factual Development, Client Meetings, and Discovery:
          114.95 hours   x   90%     =   103.455 hours
          103.455   x   90%   x   $250 per hour       =       $23,277.38

     Legal Research and Writing:
          235.7 hours   x   90%     =   212.13 hours
          212.13 hours   x   (1/5)   x   $250 per hour   =       $10,606.50

     Court Time and Trial Preparation
          115.75 hours   x   90%     =   104.175 hours
          104.175 hours   x   (2/3)   x   $250 per hour   =       $17,362.50

     Clerical:
          10 hours   x   90%   x   $100 per hour  =       $900.00
                            ***Petrou Total***       =       ***$52,146.38***

Santire:
     Factual Development and Discovery:
          0 hours   x   90%   x   $250 per hour       =       $0.00

     Legal Research and Writing:
          22.25 hours   x   (1/5)   x   $250 per hour   =       $1,112.50
          8 hours   x   (1/2)   x   $250 per hour       =       $1,000.00

     Court Time and Trial Preparation:
          30.5 hours   x   (2/3)   x   $250 per hour   =       $5,083.33

     Clerical:
          0 hours   x   90%   x   $100 per hour       =       $0.00
                         ***Santire Total***       =       ***$7,195.83***

In sum, the lodestar figure is **$59,342.21**.

     **3.**     ***Johnson* Factors' Adjustment**

DPH disputes Hickman's lodestar figure; however, DPH does not seek a downward adjustment of the lodestar on the basis of the *Johnson* factors in any way that has not already been taken into account in the creation of the lodestar figure. Hickman, on the other hand, asserts that an analysis of the *Johnson* factors supports awarding the requested lodestar figure of $134,225.00 based 536.90 hours of work on this case. Hickman directs the Court to three *Johnson* factors: the novelty and difficulty of the issues, the contingent nature of the fee, and the desirability of the case.

The Court concludes that the novelty and difficulty of the issues do not warrant an adjustment in this case. The issues of this case, while vigorously disputed and aggressively litigated by the parties, were not so unusual as to classify this case as legally or factually novel. The Court also concludes that the contingent nature of the fee and the desirability of the case do not warrant an adjustment. There is nothing to distinguish this case from many other employment disputes. Accordingly, the Court concludes the *Johnson* factors do not support an upward or downward adjustment to the lodestar figure of $59,342.21 calculated by the Court.

### B. <u>Hickman's Costs and Expenses</u>

Rule 54(d) of the Federal Rules of Civil Procedure states that "costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P.

54(d).  Indeed, the Fifth Circuit strongly presumes that costs will be awarded to a

prevailing party.  *See Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483

(5th Cir. 2006) (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017

(5th Cir. 1992)).  In general, federal courts may award only those costs itemized in 28

U.S.C. § 1920, unless there is explicit statutory or contractual authorization to the

contrary.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987);

*see also Mota v. Univ. of Tex. Hou. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir.

2001).  Section 1920 provides that recoverable costs include

> (1)  Fees of the clerk and marshal; (2)  Fees of the court reporter for all
> or any part of the stenographic transcript necessarily obtained for use in
> the case; (3)  Fees and disbursements for printing and witnesses; (4)
> Fees for exemplification and copies of papers necessarily obtained for
> use in the case; (5)  Docket fees . . . ; (6)  Compensation of court
> appointed experts, compensation of interpreters, and salaries, fees,
> expenses, and costs of special interpretation services . . . .

28 U.S.C. § 1920; *Mota*, 261 F.3d at 530.  The Fifth Circuit has interpreted the

"attorney's fee" allowed by 42 U.S.C. § 2000e-5(k) to include reasonable

out-of-pocket expenses incurred by the attorney which are normally charged to a

fee-paying client in the course of providing legal services.  See *Mota*, 261 F.3d at 529;

*Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d

374, 380 (5th Cir. 1990).  Thus, in this case, the Court may award reasonable

out-of-pocket expenses that are part of the costs normally charged to a fee-paying

client.

The Court has discretion in determining an appropriate award of costs. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). The Court is to give "careful scrutiny" to the items proposed by the prevailing party. *Kellstrom*, 50 F.3d at 335. The Court is free to decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation. *See, e.g.*, *Cypress- Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257–58 (5th Cir. 1997); *see also Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir. 1982).

Hickman seeks $1,340.36 in costs and expenses, which include filing fees, witness fees, postage and delivery charges, copying, travel fees, and office supplies. DPH objects to $708.59 of this total. Specifically, DPH objects to various copy charges for documents (medical records) that were not admissible at trial; witness fees for a witness that did not appear at trial (Dr. Hussein) and for a witness that was excluded (Ms. Garcia); and office supplies and postage and delivery charges that DPH contends fall outside 28 U.S.C. § 1920.

The Court concludes that the expenses that DPH objects to fall outside the scope of § 1920; however, most of these expenses were appropriate, necessary, and reasonable out-of-pocket expenses that would be part of the costs normally charged to a fee-paying client. For instance, the copying charges for Hickman's medical

records were clearly necessary to the factual development of the case. The Court, however, will not award Hickman the costs of witness fees for the two witnesses[12] who did not appear at trial. Accordingly, the Court exercises its discretion to award Hickman costs of $1,260.36.

### C.    DPH's Attorneys' Fees and Costs

DPH argues that it is a prevailing party on five of Hickman's eight original claims and that it is entitled to recover attorneys' fees and costs on three of these claims. Specifically, DPH contends that it is entitled to recover attorneys' fees and costs on Hickman's ADA and TCHRA disability discrimination claims, Hickman's ADA and TCHRA failure to accommodate claims, and Hickman's ERISA interference and retaliation claims. DPH, accordingly, requests the Court to award $64,651.24 in attorneys' fees and costs. Hickman objects, arguing that DPH is not entitled to recover any attorneys' fees or costs as a prevailing party on these claims because DPH has not demonstrated that these claims were frivolous.

### 1.    Legal Standards: ADA and TCHRA Claims

In an action under the ADA, the Court may award the "prevailing party" reasonable attorneys' fees, including litigation expenses and costs. *See* 42 U.S.C. § 12205. Similarly, under the TCHRA, the Court may award the "prevailing party"

---

[12]     Dr. Ayub Hussain and Maria Garcia.

reasonable attorneys' fees as part of the costs.   TEX. LABOR CODE § 21.259.

Notwithstanding the "prevailing party"language, the United States Supreme Court has

held that a court may award attorneys' fees to a prevailing defendant only "upon a

finding that the plaintiff's action was frivolous, unreasonable, or without foundation,

even though not brought in subjective bad faith."   *Christiansburg Garmet Co. v.*

*EEOC*, 434 U.S. 412, 421 (1978).  "Fee shifting statutes usually create a presumption

in favor of awarding fees to a prevailing plaintiff but allows fees to be awarded to a

prevailing defendant only if the suit was frivolous." *Stover v. Hattiesburg Public*

*School Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (citing *Sullivan v. William A.*

*Randolph, Inc.*, 504 F.3d 665, 670 (7th Cir. 2007)).

The *Christiansburg* Court cautioned that a district could should "resist the

understandable temptation to engage in *post hoc* reasoning by concluding that,

because a plaintiff did not ultimately prevail, his action must have been unreasonable

or without foundation."   *Id.* at 421–22.  The Fifth Circuit has explained that to

determine if a suit is frivolous under *Christiansburg*, the court must ask "whether the

case is so lacking in arguable merit as to be groundless or without foundation rather

than whether the claim was ultimately successful." *Stover*, 549 F.3d at 997–98 (citing

*Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)).  These same legal

principles apply to requests for attorneys' fees by a prevailing defendant under the

TCHRA.   *See, e.g.*, *Winters v. Chubb &Son, Inc.*, 132 S.W.3d 568, 580 (Tex.App.—Houston [14th Dist.] 2004, no pet.).

## 2.   ADA and TCHRA Claims: Attorneys' Fees and Costs

DPH argues that Hickman had no colorable claim under the ADA or TCHRA for discrimination or for failure to accommodate because she had no evidence to show she had a disability as defined by the ADA and the TCHRA.  DPH contends that Hickman, as a matter of law, offered no probative evidence to establish this essential element of these claims and that, therefore, these claims were frivolous, unreasonable, and without foundation.  Hickman responds that DPH has not presented any evidence that any of Hickman's unsuccessful claims were frivolous, but rather has simply repeated arguments from its summary judgment motion.

"Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Hughes v. Rowe*, 449 U.S. 5, 15–16 (1980).  While this Court ultimately determined that Hickman was unable to establish a *prima facie* case of disability discrimination, this conclusion was not easily reached on certain issues and required an extensive review of voluminous evidence presented by both parties. On the basis of the entire record in this case, the Court is not persuaded that Hickman's ADA or TCHRA disability discrimination or failure to accommodate

claims were frivolous, unreasonable, or without foundation.  DPH's request for attorneys' fees under the ADA and TCHRA is accordingly denied.

### 3.     Legal Standards: ERISA Claims

In an action under ERISA, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  The Fifth Circuit applies a bifurcated approach in awarding attorneys' fees and costs under ERISA.  *See Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 542–43 (5th Cir. 2007).  To determine whether attorneys' fees should be awarded, the Court must analyze the following "*Bowen*" factors:

> (1)  the degree of the opposing parties' culpability or bad faith; (2)  the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4)  whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5)   the  relative  merits  of  the  parties' position.

*Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980), *appeal after remand,* 695 F.2d 531 (11th Cir. 1983)).  An award of costs, however, should be granted to a "prevailing party" under a standard analogous to that provided by Federal Rule of Civil Procedure 54(d).  *See Wade*, 493 F.3d at 543; *see also Hobbs v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 619419, at *2 (S.D. Tex. 2008).

Under Rule 54(d), "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d).

### 4.  ERISA Claims:  Attorneys' Fees

Hickman claimed that DPH violated ERISA when it terminated her in retaliation for exercising her right to health benefits and interfered with her entitlement to future benefits.  The Court granted DPH summary judgment on these ERISA retaliation and interference claims.  To determine whether it is appropriate to award DPH attorneys' fees on Hickman's ERISA claims, the Court must apply the five "*Bowen*" factors.  The Court concludes that the factors weigh against an award of attorneys' fees to DPH as a prevailing defendant.

### a.  Degree of the Opposing Party's Culpability or Bad Faith

While the Court concluded that Hickman did not establish a *prima facie* case of ERISA retaliation or interference, this alone does not demonstrate that Hickman acted in bad faith in brining these claims.  Based on all the circumstances and substantial record in this case, the Court is not persuaded that Hickman acted in bad faith in bringing her ERISA claims.  Accordingly, this factor weighs against a fee award or is neutral.

### b.  Ability of Opposing Party to Satisfy an Award

The Court has little information on Hickman's current financial condition.

Nevertheless, the record reveals she has been unemployed a material amount of time since her employment with DPH.  She and her son apparently have serious medical needs.  Accordingly, Hickman appears unable now or for the foreseeable future to satisfy an award of attorneys' fees to DPH.  Thus, this factor is neutral or weighs against a fee award.

### c.  Deterrence of Similar Conduct

DPH advances no argument how an award of attorneys' fees would deter plaintiffs acting under similar circumstances from engaging in similar conduct by bringing suit.  The Court is unable to conceive of such an argument.  This factor weighs against a fee award.

### d.  Benefit to all Participants and Beneficiaries of an ERISA Plan or to Resolve Significant Legal Question Regarding ERISA Itself

There is no evidence that DPH's recovery of attorneys' fees would benefit other beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA itself.  This factor weighs against a fee award.

### e.  Relative Merits of the Parties' Positions

The Court concluded that Hickman was unable to establish a *prima facie* case of ERISA retaliation or interference because she was unable to raise a genuine fact issue that DPH acted with specific discriminatory intent or that DPH acted with the

specific intent to interfere with Hickman's ERISA rights.  However, discovery was necessary for Hickman to learn DPH's actual motivations. Much of this discovery was necessary for the claim on which she was successful.   Considering all the circumstances in the case, the Court concludes that this factor is neutral.

In sum, the Court concludes that all five of the *Bowen* factors are neutral or weigh against awarding DPH attorneys' fees on Hickman's ERISA claims.  Balancing these factors and considering the record and all the circumstances of the case, the Court declines to award attorneys' fees to DPH for defending against Hickman's ERISA claims.  Because the Court declines to award attorneys' fees, the Court does not engage in the lodestar analysis to determine whether the fees requested by DPH are reasonable.

## 5.   ERISA Claims:  Costs

The Federal Rule of Civil Procedure 54 applies to the Court's analysis of whether DPH is entitled to costs associated with her ERISA claims.  Because DPH was the prevailing party on Hickman's ERISA claims, the Court is authorized to tax costs in favor of DPH pursuant to a standard analogous to that provided by Rule 54. Hickman does not address Rule 54.  She does not contend that DPH was not the prevailing party on her ERISA retaliation and interference claims.  Nevertheless, DPH's request for compensation does not provide a breakdown of which costs are

attributable to Hickman's ERISA claims.  The Court accordingly declines to award

DPH costs as a prevailing party under Hickman's ERISA claim.

## III.   <u>CONCLUSION</u>

Based on the foregoing, it is hereby

**ORDERED** that Hickman's Motion for Attorney Fees and Costs [Doc. # 154]

is **GRANTED in part** and **DENIED in part**.  Plaintiffs are awarded fees and costs

totaling **$60,602.57**.  It is further

**ORDERED** that DPH's Motion for Attorney Fees and Costs of Prevailing

Party [Doc. # 153] is **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas this <u>14</u><sup>th</sup> day of **April, 2009.**

Nancy F. Atlas
United States District Judge